**Edmond J. GONG et al., Plaintiffs,**

v.

**Claude R. KIRK, as Governor of the State of Florida et al., Defendants.**

**Civ. No. 64–143.**

United States District Court
S. D. Florida.

Aug. 2, 1967.

Judgment Affirmed Jan. 15, 1968.
See 88 S.Ct. 695.

D. P. S. Paul, Miami, Fla., for plaintiffs.

Thomas C. Britton, County Atty., Miami, Fla., John U. Lloyd, County Atty., Fort Lauderdale, Fla., for defendants.

Manning J. Dauer, Gainesville, Fla., amicus curiæ.

Before DYER, Circuit Judge, CHOATE, Senior District Judge, and McRAE, District Judge.

## OPINION

PER CURIAM.

On March 3, 1964, plaintiffs, each a citizen of the United States and of Florida, and each a qualified voter in the county of his residence and in the congressional district in which he resides, brought an action against the Governor, the Secretary of State, the members of the Boards of County Commissioners of Dade and Broward counties, and the

members of the Board of State Canvassers of the State of Florida. The plaintiffs seek a declaration that Fla.Stat. § 8.01, F.S.A., is unconstitutional, an injunction against the enforcement of that statute, and further equitable relief. Plaintiffs allege that the division of the State of Florida into twelve congressional districts made by Fla.Stat. § 8.01, F.S.A., was not determined on the basis of equal population of these districts, and is in violation of Article I and the fourteenth amendment of the United States Constitution.

On May 11, 1964, plaintiff's request for a preliminary injunction was denied, and further decision was reserved until after the 1965 session of the Florida Legislature. That Legislature enacted Ch. 65–2441, Fla.Laws of 1965, 2nd Ex. Sess., which amended Fla.Stat. §§ 8.01 and 8.04, F.S.A. On March 1, 1966, the court found that the 1965 act met the contitutional standard of Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L. Ed.2d 481 (1964), "on a temporary basis." [1]

An appeal to the United States Court of Appeals for the Fifth Circuit from the March 1, 1966, order resulted in a ruling that the district judge and the appellate court were without jurisdiction, since a three-judge court was required under 28 U.S.C. § 2281. Gong v. Kirk, 375 F.2d 728 (5th Cir. 1967).

Pursuant to the mandate of the Fifth Circuit a three-judge district court was convened. A pre-trial hearing was held on June 30, 1967. At the hearing the parties submitted all issues and evidentiary matters and stipulated that no testimony need be taken and that no further hearing need be held. [2]

Florida's total 1960 population according to the official decennial federal census is 4,951,560. The use of the federal decennial census is provided as a basis for constitutional apportionments by Section 5, Article VII, of the Florida Constitution, F.S.A. The federal decennial census meets the minimal requirements of the equal protection clause, and no other census or population computation has been shown to be accurate. Swann v. Adams, 263 F.Supp. 225, U.S. Dist.Ct., So.Dist. of Fla., Findings of Fact and Conclusions of Law, Feb. 13, 1967; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

As a result of the 1960 decennial census, and in accordance with 2 U.S.C. § 2a, Florida is entitled to twelve members of the House of Representatives. Dividing Florida into twelve congressional districts, each should ideally consist of 412,-630 persons.

The present twelve congressional districts are established by Fla.Stat. § 8.01, F.S.A., Ch. 65–2441, Laws of Florida, 1965, 2nd Ex.Sess. The district with the largest population contains 465,160 (+12.73%); the district with the

1. The order provided that the court "retains jurisdiction of this case until 60 days after the next [1967] session of the Florida Legislature so as to then further determine whether the Legislature has redistricted the State of Florida into congressional districts meeting the standard established by Wesberry v. Sanders, in light of the then situation." A further order, dated March 7, 1966, directed the Attorney General of the State of Florida to suggest to the Governor "that it is important that he consider expanding his call for a Special Session of the Legislature so that the Legislature might consider any further changes in Congressional reapportionment that would bring a closer approximation of equality in the districts than now exists under the present law, keeping in mind that it is the duty of the Governor and the Legislature to comply with the law governing reapportionment as closely as possible."

In fine, various sessions of the Florida Legislature have been given opportunities to fulfil their constitutional duty to provide for proper congressional representation for this state. They have failed to do so.

2. The court stated that in the event the 1967 Legislature, then in regular session, acted on the redistricting matter, the cause would be reopened for further presentations. The Legislature has now adjourned its regular session without passing a redistricting bill.

smallest population contains 374,665 (−9.21%). The maximum total variance is 21.94%. The present congressional districts are unconstitutional as in violation of Article I, section 2 of the Constitution of the United States, and the equal protection clause of the fourteenth amendment. Duddleston v. Grills, 385 U.S. 455, 87 S.Ct. 611, 17 L.Ed.2d 508 (1967) vacating, Grills v. Branigin, 255 F.Supp. 155 (S.D.Ind.1966); Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); cf., the order of March 1, 1966, entered in the instant cause.

The court has considered the redistricting plans proposed by the parties and by Dr. Manning J. Dauer,[3] amicus curiae, together with the maps, population charts, and briefs in support of the plans. One plan offered by plaintiffs calls for six at-large districts and six area districts. The court has previously considered requiring congressional elections to be held at-large  See Order of May 13, 1964, filed in this cause. At-large elections, though clearly meeting the one-man one-vote mandate, are not in the best interest of the citizens of this state. The cost of campaigning state-wide every two years for a congressional office would be prohibitive for many qualified candidates. At-large representation is also objectionable in that it would remove congressmen from that more immediate contact with their constituents which has been traditional in district representation. This plan is therefore rejected.

The other four proposals[4] are rejected in favor of a plan largely based on House Bill 3088.[5] In the plan adopted by the court, the district with the largest population contains 415,704 persons (+.74%); the district with the smallest population contains 407,677 persons (−1.20%). The total maximum deviation from mathematical equality is 1.-94%.

Since federal census figures are not available by presently established precincts, a calculation of the population of each relevant voting precinct was made by determining the ratio, based on the most recent voter registration figures, of the registered voters in each voting precinct to the total registered voters of the particular county and applying that ratio to the county population as shown by the 1960 decennial census: i. e., county registration is to county population as precinct registration is to precinct population. This formula was suggested by both plaintiffs and defendants.[6]

3. Professor of Political Science, University of Florida.

4. The total maximum deviation in these proposals are as follows:
   Plaintiffs' Exhibit A—2.98%
   Defendants' House Bill 3088—2.81%
   Defendants' Senate Bill 1652—8%
   Dr. Dauer's Plan—2.33%

5. House Bill 3088 was introduced, but failed to pass, in the 1967 Legislature.

6. In his scholarly brief Dr. Dauer urged the use of federal census enumeration districts. These are small areas each with a population of close to 1,000 inhabitants, for which census data are tabulated.
   Dr. Dauer claims that these enumeration districts are accurate, and that by using them as building blocks it would be possible to arrive at districts with a deviation from largest to smallest district of two per cent. Maps of each county, showing the number of inhabitants in and the geographic boundaries of each enumeration district are the working papers for figures published by the United States Bureau of Census. These working papers are not published generally but photostats are sold by the Bureau, and a set is available at the College of Business Administration, University of Florida. However, the data is not available in county records, and it is not feasible for the court to seek out, correlate and digest the voluminous documents and data. Furthermore, as previously noted, the plan adopted by the court contains a total maximum deviation of less than two per cent.

The congressional districting for the State of Florida, shall contain twelve districts as follows:

| DISTRICT | POPULATION | % DEVIATION FROM EQUALITY |
|:---:|:---:|:---:|
| 1 | 415,496 | + .69 |
| 2 | 407,677 | —1.20 |
| 3 | 411,683 | — .23 |
| 4 | 409,716 | — .71 |
| 5 | 409,532 | — .75 |
| 6 | 415,704 | + .74 |
| 7 | 414,474 | + .44 |
| 8 | 411,450 | — .29 |
| 9 | 409,952 | — .64 |
| 10 | 414,998 | + .57 |
| 11 | 414,759 | + .51 |
| 12 | 414,691 | + .49 |

Smallest – —1.20% (2nd Dist.)

Largest – + .74% (6th Dist.)

Total Maximum Deviation – 1.94%

The areas of these twelve districts are as set forth in the final order entered this day.

### FINAL ORDER

In accordance with the opinion of the court, it is hereby ordered, adjudged and decreed:

1. Defendants are hereby enjoined from enforcing Florida Statute § 8.01 (1965), F.S.A.

2. Candidates for the office of congressman for each of the districts provided by this order shall be nominated in 1968, as provided by law, and a congressman shall be elected from each district at the general election to be held in 1968.

3. The State of Florida is hereby divided into twelve congressional districts, designated by the following numbers and areas:

(1) The first congressional district is constituted by and composed of the counties of Escambia, Santa Rosa, Okaloosa, Walton, Holmes, Jackson, Washington, Bay and Gulf.

(2) The second congressional district is constituted by and composed of the counties of Liberty, Clay, Gadsden, Leon, Franklin, Wakulla, Jefferson, Madison, Taylor, Hamilton, Calhoun, Suwanee, Lafayette, Dixie, Columbia, Gilchrist, Levy, Alachua, Bradford, Union, Baker, Putnam and Nassau.

(3) The third congressional district is constituted by and composed of the county of Duval less the following numbered precincts as the same existed on January 1, 1966: Precincts No. 36–A, 36, 31, 31–A, 31–B, 34–A, 35, 30, 30–A, 29–E, 29–J, 29–K, 28–C, 28–I, 29–H, 29–G.

(4) The fourth congressional district is constituted by and composed of the counties of St. Johns, Flagler, Citrus, Hernando, Sumter, Marion, Lake, Volusia, and Seminole; that part of Duval County excluded from the third congressional district in subsection (3); and the following numbered precincts in Brevard County as the same existed on January 1, 1966: Precincts No. 1, 14, 16, 24, and 36.

(5) The fifth congressional district is constituted by and composed of the

counties of Orange, Indian River, Osceola, and all of Brevard County except that part enumerated by precincts in subsection (4).

(6) The sixth congressional district is constituted by and composed of the county of Hillsborough and the following numbered precincts in Polk County as the same existed on January 1, 1966: Precincts No. 4, 5, 8, 9, 17, 54, 55, 56, and 57.

(7) The seventh congressional district is constituted by and composed of the counties of Lee, Charlotte, DeSoto, Hardee, Sarasota, Manatee, and all of Polk County except that part enumerated by precincts in subsection (6).

(8) The eighth congressional district is constituted by and composed of the counties of Pinellas and Pasco.

(9) The ninth congressional district is constituted by and composed of the counties of Collier, Palm Beach, Hendry, Martin, St. Lucie, Highlands, Okeechobee, Glades, and the following numbered precincts in Broward County as the same existed on January 1, 1966: Precincts No. 1, 1–A, 1–B, 2, 2–A, 2–B, 2–C, 3, 4, 4–A, 4–B, 4–C, 4–D, 4–E, 5, 5–A, 6, 6–A, 7, 7–A, 8, 9, 9–A, 10, 11, 11–A, 11–B, 11–C, 11–D, 11–F, 12–A, 12–B, and 12–C.

(10) The tenth congressional district is constituted by and composed of all of Broward County except that part enumerated by precincts in subsection (9); and that part of Dade County included within the following numbered precincts as the same existed on January 1, 1966: Precincts No. 2, 3, 240, 239, 241, 12, 4, 5, 6, 215, 7, 242, 211, 212, 213, 214, 8, 315, 9, 246, 247, 216, 10, 243, 15, 245, 249, 250, 251, 17, 18, 19, 20, 21, 22, 23, 248, 44, 217, 253, 29, 28, 27, 254, 26, 25, 24, 255, and 263.

(11) The eleventh congressional district is constituted by and composed of the portion of Dade County lying south of a line described as follows:

Commencing at the point of intersection of the North county line of Dade County with the East line of Section 34, township fifty-one south (T 51 S), range forty-two east (R 42 E); thence Southerly along said section line to NE 175th Street; thence Westerly along NE 175th Street to NE 22nd Avenue; thence Northerly along NE 22nd Avenue to NE 183rd Street; thence Westerly along NE 183rd Street to NE 19th Avenue; thence Southerly along NE 19th Avenue to NE 176th Street; thence Westerly to the center line of Snake Creek Canal; thence Northwesterly along the center line of Snake Creek Canal to NE 183rd Street; thence Westerly along NE 183rd Street to NE 10th Avenue; thence Southerly along NE 10th Avenue to State Road 826; thence Southeasterly along State Road 826 to NE 14th Avenue; thence South along NE 14th Avenue to NE 149th Street; thence East along NE 149th Street to West Dixie Highway; thence Southwesterly along the West Dixie Highway to NE 140th Street; thence East along NE 140th Street to NE 16th Avenue; thence South along NE 16th Avenue to NE 121st Street; thence West along NE 121st Street to NE 8th Avenue; thence Southerly along NE 8th Avenue to the center line of Biscayne Canal; thence Northwesterly along the center line of the Biscayne Canal to the West Dixie Highway; thence Southwest along West Dixie Highway to NE 119th Street; thence West along NE and NW 119th Street and Gratigny Drive to Red Road; thence North on Red Road to NW 122nd Street; thence West along NW 122nd Street and the extensions thereof to the West line of Dade County; and lying north of a line described as follows:

Commencing at the point of intersection of the West county line of Dade County with the Tamiami Trail; thence Easterly along the Tamiami Trail to SW 68th Avenue; thence Northerly to the center line of West Flagler Street; thence Westerly along the center line of West Flagler Street to the center line of the Tamiami Canal; thence Easterly along the center line of the Tamiami Canal to its intersection with NW 20th Street; thence Easterly along NW 20th Street to

NW 12th Avenue; thence Southerly along NW 12th Avenue to the North bank of the Miami River; thence Easterly along the North bank of the Miami River to NW 11th Avenue; thence South along NW 11th Avenue to the center line of West Flagler Street; thence Westerly along the center line of West Flagler Street to SW 13th Avenue; thence Southerly along SW 13th Avenue to SW 8th Street; thence Easterly along SW 8th Street to the city limits of the city of Miami; thence East and Southeasterly to the Atlantic Ocean at Norris Cut.

Said watercourses, streets, avenues, roads and city limits being referred to as the same existed on January 1, 1966.

(12) The twelfth congressional district is constituted by and composed of all of Monroe County and those precincts in Dade County lying south of the southern boundary line of the eleventh congressional district described in subsection (11).