Argued March 20; peremptory writ allowed March 27, 1934

# EKWALL *v.* STADELMAN

(30 P. (2d) 1037)

*B. G. Skulason,* of Portland, and *Custer E. Ross,* of Salem, for petitioner.

*Willis S. Moore,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondent.

RAND, C. J. This is a mandamus proceeding brought in this court to compel the secretary of state to accept and file the declaration of candidacy of W. A. Ekwall, a judge of the circuit court for Multnomah county, for the office of representative in Congress for the third congressional district of this state. Judge Ekwall, the relator, was elected to the office of circuit judge for a term which will not expire until January, 1939, and, before entering upon his duties as such, he took, subscribed and transmitted to the secretary of state an oath which contained the declaration: "I will not accept any other office, except judicial offices, during the term for which I have been elected." His declaration was refused and the above facts are now urged as the sole grounds for sustaining a demurrer which the defendant has interposed to the writ.

It is contended on behalf of the writ, (1) that there was no provision of law which required the relator to take such an oath before entering upon his duties as a circuit judge and that, since the oath was taken without authority of law, it was extrajudicial only and, therefore, of no legal force or effect, and, (2) that if the oath was one which the law required to be taken, then the declaration is null and void because in conflict with the federal constitution.

■ The first contention is based upon the fact that prior to the 1910 amendment of Article VII of the state constitution circuit judges were required by section 10 thereof to take and subscribe to the same oath

that justices of the supreme court were required to take by section 21 thereof. Said section 21 prescribed the form of the oath and included the very language objected to. As so amended, Article VII omitted section 10 but by section 7 thereof included section 21, merely omitting therefrom the words "and circuit courts". But section 2, Article VII, as amended, provides that "the courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law". This latter provision has the effect, as held in *Holman v. Lutz,* 132 Or. 185 (282 P. 241, 284 P. 825), and many other decisions of this court, of continuing the provisions of said section 10 in full force and effect until changed by some subsequent legislation, although section 10 had been omitted from the amended Article. There has been no such enactment and those provisions are in full force and effect and, hence, the relator was required to take this particular oath before entering upon the discharge of his duties as a circuit judge. Again, by section 3 of Article XV of the state constitution, every person elected or appointed to an office under the constitution is required, before entering upon the duties thereof, to "take an oath or affirmation to support the constitution of the United States, and of this state, and also an oath of office". No other oath is prescribed for circuit judges, either by the constitution or by any statute of this state and, for that reason also, the relator was required to take this particular oath.

■ Nor do we find any merit in the contention argued by counsel for the relator that, because the oath taken contains the word "accept" in its application to other offices, it applies only to the acceptance of the office

after election and has no application to the steps necessary to be taken to secure such an election. The right to accept an office implies the right to be chosen for that office and it would seem to follow as a necessary consequence that, if a person was ineligible to hold a particular office, he would be ineligible to become a candidate for that particular office at a primary election under the laws existing in this state.

This leaves for decision the question of whether, by reason of having taken the oath, the relator is disqualified from holding the office of representative during the term for which he has been elected as circuit judge.

The constitution of the United States creates the office of representative and prescribes his qualifications. By Article I, section 2, no person can be a representative until he has attained the age of twenty-five years and has been seven years a citizen of the United States and is at the time of his election an inhabitant of the state from which he is chosen. The qualifications thus enumerated are the only qualifications prescribed by the constitution for the office of representative, section 3 of the Fourteenth Amendment being, of course, inapplicable. If no person can be elected to that office who does not possess these qualifications, it follows by a familiar rule of interpretation that any person who does possess them may be elected. The very enumeration of them excludes the idea that, in the adoption of the constitution, the people intended that there should be any other qualifications. As was said by Madison in the convention which framed the constitution (see 5 Elliot's Debates, 404):

"The qualifications of electors and elected are fundamental articles in a republican government, and ought to be fixed by the Constitution. If the legislature

could regulate those of either, it can by degrees subvert the Constitution."

Again, as said by Senator Foote in his argument in the United States Senate in the Trumbull case:

"It comes within a familiar principle, that the enumeration of certain requisites of qualification, or of certain disabilities to election, is the negation of all others, and is equivalent to a positive prohibition of all authority to impose any others." 3 Am. Law Rev., p. 417.

And Judge Story, in his Commentaries on the Constitution, section 625, says:

"It would seem but fair reasoning upon the plainest principles of interpretation, that when the Constitution established certain qualifications, as necessary for office, it meant to exclude all others, as prerequisites. From the very nature of such a provision, the affirmation of these qualifications would seem to imply a negative of all others. * * * A power to add new qualifications is certainly equivalent to a power to vary them."

Kent, in his Commentaries, vol. 1, p. *229, note (f), says:

"The question whether the individual states can superadd to or vary the qualifications prescribed to the representatives by the Constitution of the United States is examined in Mr. Justice Story's Commentaries on the Constitution, ii, 99 to 103, but the objections to the existence of any such power appear to me to be too palpable and weighty to admit of any discussion."

Again, as said by Cooley in his General Principles of Constitutional Law (3d Ed.), pages 285, 290:

"The Constitution and laws of the United States determine what shall be the qualifications for federal offices, and state Constitutions and laws can neither

add to nor take away from them. This has been repeatedly decided in Congress in the case of persons elected to seats therein, when provisions in the state Constitution, if valid, would render them ineligible. Legislative elections are determined by the body for a seat in which the election is had. This is expressly so provided by the Constitution in the case of the two houses of Congress, and the judiciary can in no manner interfere with their conclusions.''

The only case to which our attention has been directed where this question has been directly passed upon by the courts is *State v. Howell,* 104 Wash. 99 (175 P. 569). In that case, there was a provision of the state constitution which provided that justices of the supreme and superior courts shall be ineligible to any other office or employment during the term for which they are elected. Judge Webster had been elected as a justice of the supreme court of that state and had resigned, but before his term had expired he became a candidate for the office of representative in Congress and an action was brought to prohibit the placing of his name on the primary ballot. In deciding the case, the court, in a very able opinion written by Mr. Justice Mackintosh, among other things, said:

''* * * The office of a member of Congress is created by the federal Constitution, and that instrument is the only one which attempts in terms to specify the qualifications necessary to be possessed by an occupant of the office. To allow the several states to add to or vary the qualifications set forth in the federal Constitution would be to allow the several states to determine the qualifications of the members of Congress, which power, by the federal Constitution, is expressly delegated to the respective houses of Congress. So long as a candidate for membership in Congress meets the requirements set forth in the Constitution which created the office, no state has the right or authority to prevent his candidacy either by pro-

visions in its Constitution or in its statutes. The state courts may be authorized to determine the eligibility of a candidate, and may prevent the certification of an ineligible candidate; but the test of eligibility must be that laid down in the federal Constitution.  *  *  * When the state of Washington attempted in its Constitution to prevent members of its courts from becoming candidates for any office other than a judicial one during the terms for which they were elected, it came in conflict with the federal Constitution, in so far as it thus attempted to impose additional qualifications for membership in Congress, and in so far that provision is inoperative and void. For offices created by the state, the state by its Constitution and statutes may provide such qualifications and restrictions as it deems proper; but for offices created under other authority we must look to the creating authority for all qualifications and restrictions.

"Some reliance has been placed upon language used by this court in the case of State ex rel. Reynolds v. Howell, 70 Wash. 467, 126 P. 954, 41 L. R. A. (N. S.) 1119, as sustaining the contention that a judge, upon assuming his office, agrees to the constitutional provisions. But it must be remembered that the oath which the judge takes is not only one of allegiance to the Constitution of the state, but the federal Constitution as well, and where those Constitutions are in conflict the first duty is to the superior authority. It is true that in the case just referred to language broader than was necessary to its decision is used in the opinion, but the decision of that case is only that a member of the court cannot, during the term for which he is elected, become a candidate for any office created by the Constitution or laws of this state, other than a judicial office."

Obviously, under our form of government which consists of a federal and state government, both of which, within the sphere of their powers, being wholly independent of the other, it was necessary that the

constitution should fix a uniform rule of qualifications for the representatives of the people in Congress, and it is evident that the object of the constitution in enumerating the qualifications for representatives was that they might be uniform throughout the Union. This thought was stated by Senator Crittenden, who said, in the Trumbull case:

"The object of the federal Constitution was to have a body framed by a uniform rule throughout the United States, coming here to constitute this great council of the country, * * * coming here under the same requirements, and with the same qualifications and standing here upon a perfect and exact equality in all respects to represent the nation justly and equally."

See 3 American Law Review, p. 420.

By section 5 of Article I of the federal constitution, each House is the sole judge of the qualifications of its own members. It is obvious that those qualifications of which they are to judge must be those prescribed by the constitution of the United States, and by them alone. A representative is an officer, not of the state but of the federal government: *Lamar v. United States,* 241 U. S. 103 (36 S. Ct. 535, 60 L. Ed. 912). The office of representative being created by the constitution and his power being such as is therein defined, there can be no other qualifications than those contained in the constitution itself, and in respect to those matters, the provisions of the constitution are the supreme law of the land.

There are many other reasons which could be given to show that the states have no power either through their constitution or by statute to add any qualifications to those prescribed by the constitution for the

office of representative but, in view of what has been said, it would seem to be unnecessary to discuss the matter to any greater extent.

For the reasons stated a peremptory writ must issue, directing the secretary of state to accept for filing and file the relator's declaration of candidacy upon his payment of the requisite fee and tender of the same for filing if within the time prescribed by law, and it is so ordered.

---

KELLY, J. (specially concurring). The writer concurs in the opinion of the court except wherein it is stated that the provisions of section 10 of the original Article VII are in full force and effect; hence, the relator was required to take the same oath as the supreme judges; and also because every person elected or appointed to an office under the constitution is required before entering upon the duties thereof, to "take an oath or affirmation to support the constitution of the United States and of this state, and also an oath of office", and no other oath being prescribed, the duty to take the oath in question devolved upon relator.

In this particular, the controlling mandate of the constitution is section 2 of Article VII as amended in 1910. It prescribes:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."

It will be noted that nothing is said therein about the character of an official oath, or that the requirement of the original article VII in regard thereto should continue to be in force and effect.

Section 10 of the original Article VII of the constitution is the only basis for holding that the relator as a circuit judge was required to take the oath in question. It provides:

"When supreme and circuit judges may be elected in distinct classes—Duties of judges.—When the white population of the state shall amount to two hundred thousand, the legislative assembly may provide for the election of supreme and circuit judges in distinct classes, one of which classes shall consist of three justices of the supreme court, who shall not perform circuit duty, and the other class shall consist of the necessary number of circuit judges, who shall hold full terms without allotment, and who shall take the same oath as the supreme judges."

The view of the writer is that this section was expressly changed by section 1 of Article VII as adopted in 1910. Said section is as follows:

"§ 1. Judicial power of state, in whom vested—Term of supreme judges.—The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. The judges of the supreme and other courts shall be elected by the legal voters of the state or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, which compensation shall not be diminished during the term for which they are elected."

It is true that section 1 of the original Article VII was also thus expressly changed. This change in said section 10 is no less apparent than in said section 1.

Section 10 deals with two classes of officers, both of which must be elected, one of which shall not perform circuit duty, and the other class shall consist of the necessary number of circuit judges, who shall hold full terms without allotment and who shall take the same oath as supreme judges.

The changes are that no longer is the election of supreme judges to be confined to a class of three; no longer is there an inhibition against the performance of circuit duty by supreme judges; circuit judgeships are no longer constitutional officers, but depend upon the saving clause in section 2, above quoted, for their continuance until otherwise provided by the legislature or by future constitutional amendment; no longer when a vacancy in the office of circuit judge is filled by election is the one so elected restricted in his tenure to the remainder of the vacant term only, but his tenure is six years; and, in the opinion of the writer, no longer is there a class of circuit judges who shall take the same oath as supreme judges.

The writer deems the reenactment of section 21 of the original Article VII (which is now section 7 of Article VII) to be a construction of section 2 of the existing Article VII to the effect that it was not intended to serve as a mandate continuing the requirement that supreme or other judges should take a distinctive and different oath from that required by persons elected or appointed to other offices. No other reason is to be found for the reenactment of section 21 of the original Article VII.

It is true that section 3 of Article XV requires an oath of every person elected or appointed to any office. Except as therein prescribed, there is no form of oath prescribed either by constitution or statute for most of the offices. The directors of a banking institution, grand jurors, guardian, selling real estate, judges and clerks of election, and trial jurors are required by statute to take distinctive oaths differing from the oath set forth in section 3 of Article XV; but the governor, the secretary of state, the state treasurer, and other nonjudicial state officials are not.

The vice in holding circuit judges ineligible to other than judicial office during the term for which they are elected is apparent when we realize that, at any time, the legislature may abolish their office. The writer realizes that this is not at all to be expected, but, if it should occur, why should the incumbents be deprived of the right given to every other citizen, that of aspiring to and accepting public office.

The writer thinks that if the framers of the original article had intended to render judicial officers ineligible to nonjudicial office they would have said so.

To the writer there is no reason applicable to circuit judges for requiring such an oath which is not equally applicable to county judges, district judges, justices of the peace, and for that matter to any other officer performing judicial functions.

The writer agrees with the majority that a peremptory writ should issue.