Conrad JOYNER, Plaintiff,

v.

Rose MOFFORD, Secretary of State, State of Arizona; et al., Defendants.

No. CIV–82–196–TUC–ACM.

United States District Court, D. Arizona.

May 24, 1982.

Andrew M. Federhar, Bilby, Shoenhair, Warnock & Dolph, P. C., Tucson, Ariz., for plaintiff.

Alan S. Kamin, Asst. Atty. Gen., Phoenix, Ariz., Mark R. Christensen, Deputy County Atty., Tucson, Ariz., for defendants.

### ORDER

MARQUEZ, District Judge.

Plaintiff has brought this action in the United States District Court praying that this court declare unconstitutional Article XXII, § 18 of the Constitution of the State of Arizona and to enjoin the defendants from enforcing that provision against the defendant. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.

Defendant Rose Mofford is the Secretary of State for the State of Arizona and is statutorily required to accept petitions of candidates for federal office. Defendant, Robert Corbin is the Attorney General of the State of Arizona and is authorized under A.R.S. § 12–2041 to bring an action against any person who unlawfully holds any public office within the State of Arizona. Defendant, Steven Neely, is the duly elected County Attorney for the County of Pima, State of Arizona, and is empowered, pursuant to A.R.S. § 12–2042, to bring an action in the Superior Court of the State of Arizona against any person who unlawfully holds any public office within the county.

The plaintiff, Conrad Joyner, is a member of the Pima County Board of Supervisors, the governing body politic for Pima County. He won re-election to that seat in 1980 and his current term expires in January of 1984. Joyner has announced his intention to seek office in the newly created Fifth District of Arizona for the United States House of Representatives. He desires to retain his elected position while campaigning for Congress so he may complete his term as supervisor in the event he is unsuccessful in his pursuit of the Congressional office.

Article XXII, § 18, of the Constitution of the State of Arizona reads as follows:

Except during the final year of the term being served, no incumbent of a salaried elected office, whether holding by election or appointment, may offer himself for nomination or election to any salaried local, state or *federal* office. (Emphasis added)

The parties are in agreement that because the plaintiff is not in his final year of office, the defendants could bring an action against the plaintiff forcing him to either resign or declaring his office vacant.

Recognizing this possibility, Joyner has brought this action alleging that the provision of the Arizona Constitution in question is unconstitutional insofar as it prevents him from seeking a federal office without resigning his position as supervisor.

The qualifications clause of the United States Constitution provides:

No person shall be a representative who shall not have attained to the age of 25 years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen.

U.S. Constitution, Art. I, § 2, clause 2.

The Supreme Court of the United States has held that the qualifications enumerated in this clause are exclusive. In *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), the Supreme Court held that Congress cannot add to, subtract from, or modify these qualifications. In *Powell, supra*, the House of Representatives voted to exclude Adam Clayton Powell from the house and declared his seat vacant. Powell had been elected to the 90th Congress from the Eighteenth Congressional District of New York. A special committee had been investigating expenditures in Powell's committee during the 89th Congress. There was strong evidence that certain illegal salary payments had been made to Powell's wife at his direction. Powell brought an action in federal court alleging that the action by the House of Representatives violated the qualifications clause and that the House could not legally refuse him his seat in Congress. The Supreme Court, in a lengthy opinion, reviewed the history of the qualifications clause. The court pointed out that "a fundamental principal of our representative democracy is that the people should choose whom they please to govern them." The court went on to hold that in judging the qualifications of its members Congress is limited to the standing qualifications prescribed in the United States Constitution.

The same principal that Congress cannot add to, subtract from, or modify these qualifications, applies with equal force to the states. Numerous state laws have been invalidated for imposing additional qualifications for nomination or election to Congress in violation of the Clause.[1]

---

1. *Dillon v. Fiorina*, 340 F.Supp. 729 (D.N.M. 1972) (filing fee and one-year party affiliation

to run in primary); *Stack v. Adams*, 315

Defendants have cited no authority and the court is aware of no case which has held constitutional a provision as broad as Arizona's. Those cases that have approved a regulation were concerned with provisions which are, as will be seen below, far more narrowly drawn.[2]

■ The legislature of the State of Arizona has on two previous occasions passed legislation strikingly similar to the provision in question before the court now. In both *Stockton v. McFarland, supra,* and *State, ex rel. Pickrell v. Senner,* 92 Ariz. 243, 375 P.2d 728 (1962), the Arizona Supreme Court noted the statutes were violative of the United States Constitution with regard to regulation of federal officers. In *Stockton, supra,* the Court examined a statute far more narrowly drawn than the statute Joyner challenges, a statute which has found some support in the judiciary in the past several years. *See generally, Signorelli v. Evans,* 637 F.2d 853 (2d Cir. 1980). In *Stockton,* the court was asked to determine the constitutionality of the following statute:

> Judges of the Supreme Court and judges of the superior courts shall not be eligible to any office or public employment other than a judicial office of employment, during the term for which they shall have been elected.

In *Stockton,* the defendant, McFarland, had met the qualifications as established by the United States Constitution to become a candidate for the United States Senate. However, because McFarland was also a superi-

or court judge in the state of Arizona, the plaintiff alleged that McFarland should be disqualified from running for the federal office. The Arizona Supreme Court held that the precise question, determinative of the issue, was whether a state, through its Constitution or statutes, can add to or take away from the qualifications for a member of Congress prescribed by the Constitution of the United States. The Arizona Supreme Court relying on Section 5, Article 1 of the United States Constitution, wrote, "It is obvious that those qualifications of which they are to judge must be those prescribed by the Constitution of the United States and by them alone. A Representative is an officer, not of the state but of the federal government," *citing Lamar v. United States,* 241 U.S. 103, 36 S.Ct. 535, 60 L.Ed. 912 (1915). The office of representative being created by the Constitution and his power being such as therein defined, there can be no other qualifications than those contained in the Constitution itself, and, in respect to those matters, the provisions of the Constitution are the supreme law of the land. *Ekwall v. Stadelman,* 146 Or. 439, 30 P.2d 1037 (1934). In reaching this decision the Arizona court found the intent of the drafters of the Constitution to be in accord with their decision. Quoting Alexander Hamilton in the Federalist LX, the court agreed with Hamilton when he wrote:

> The qualifications of the persons who may choose, or be chosen, as has been remarked upon another occasion, are

F.Supp. 1295 (N.D.Fla.1970) (exclusion of state office holders); *Stockton v. McFarland,* 56 Ariz. 138, 106 P.2d 328 (1940) (exclusion of judges during term of office); *Buckingham v. State,* 42 Del. 405, 35 A.2d 903 (1944) (exclusion of judges during term of office and 6 months thereafter); *Lowe v. Fowler,* 240 Ga. 213, 240 S.E.2d 70 (1977) (exclusion of state office holders); *Hellman v. Collier,* 217 Md. 93, 141 A.2d 908 (1958) (district residency requirement); *Danielson v. Fitzsimmons,* 232 Minn. 149, 44 N.W.2d 484 (1950) (exclusion of convicted felons); *Riley v. Cordell,* 200 Okl. 390, 194 P.2d 857 (1948) (exclusion of judges during term of office); *Ekwall v. Stadelman,* 146 Or. 439, 30 P.2d 1037 (1934) (exclusion of judges during term of office).

**2.** *See, Fashing v. Moore,* 489 F.Supp. 471 (W.D. Tex.1980), *affirmed* unpublished opinion, Fifth Cir. October 31, 1980, argued before Supreme Court 50 L.W. 3090. Where District Court and Court of Appeals declared unconstitutional on equal protection grounds a far more narrowly drawn statute relating to state elected officeholders running for federal office. It should be noted that the decision herein is based upon the Qualifications Clause and Supremacy Clause of the United States Constitution and that therefore the Supreme Court's decision in *Fashing* should not effect the Court's decision today.

defined and fixed in the Constitution, and are unalterable by the legislature.

The State has responded to this clear line of authority by arguing first, that they have not added a qualification to running for federal office by the constitutional provision in question but have only sought to control the activities of their state officeholders, and secondly, that the state has a legitimate and valid interest in controlling the activities of their state officeholders.

In *State v. Senner, supra,* the Arizona Supreme Court dealt summarily with the question of qualifications. The court found that language which in effect required a person to leave his present public office in order to seek another public office to be a clear and unambiguous affirmation of qualification requirements for candidates to public office. The court wrote that "to qualify for an office other than the one held the candidate must resign from his present position. It is no less clear in meaning than a provision which says that before a man can run for an office he must attain the age of twenty-five years."

Alternatively the state argues that the constitutional provision in question seeks only to control the activities of state officeholders, a legitimate state interest, and that this legitimate interest is sufficient to sustain the validity of the provision. The state has cited four cases, all of which involve the control of state judicial officeholders from running for federal office while still holding their positions in the judicial system. However, in the case at bar, the state provision applies to all salaried elected officeholders within the state of Arizona. As the court noted in *Signorelli,*[3] *supra,* in sustaining a narrower provision:

We believe there is a distinction to be drawn between restrictions upon a broad range of occupations, which, if attempted, would indirectly impose added requirements for Congressional office upon large categories of people, and restrictions upon specified state offices peculiarly within the essential regulatory authority of the state.

Here, the state legislature of Arizona has attempted to limit the potential of every salaried elected officeholder in the state to run for federal office. To the extent that a state may be able to exercise this power in the context of state judicial officers, the statute under consideration does not draw this distinction. Article XXII, § 18 of the Arizona Constitution applies equally to the constable of the smallest Arizona municipality and the Governor of the State of Arizona. Such a broad legislative enactment

---

**3.** In *Signorelli, supra,* the plaintiff, Signorelli, wished to retain his judicial post while campaigning so he could complete his term as judge in the event he was unsuccessful in his pursuit of Congressional office. The Court of Appeals cited *Stockton v. McFarland, supra,* and other cases as examples of cases that have indicated a "fundamental principal of our representative democracy that the people should choose whom they please to govern them." The court admitted that New York's regulatory scheme, though focusing on the judicial office, rather than on the ballot, imposes, albeit indirectly, a qualification upon Signorelli's freedom to run for Congress. In addition to being over 25, a citizen for seven years and an inhabitant of New York, *he must not be a state judge.* The court in sustaining the regulations pointed out that New York's purpose is to regulate the judicial office that Signorelli holds and not the Congressional office he seeks.

The court was careful to point out, however, that this line of argument was dangerous, that it could permit states, exercising their acknowledged authority to regulate occupations, to require lawyers to resign from the bar or business executives to resign corporate offices prior to seeking public office. *Such a sweeping elimination of broad categories of people from those eligible for election would conflict with the expressed intent of the framers of the constitution to maintain broad public choice of elected representatives.* The court further pointed out that there is a distinction to be drawn between restrictions upon a broad range of occupations, which, if attempted, would indirectly impose added requirements for Congressional office upon large categories of people, and restrictions upon specified state offices peculiarly within the essential regulatory authority of the state. In the statute under consideration there has been no consideration towards restricting specified state offices. Rather the legislature has simply eliminated all salaried elected state officeholders from seeking federal office while a state officeholder. This blanket restriction upon an entire range of occupations as performed by salaried elected state officeholders is simply too broad.

cannot pass constitutional muster, particularly given the general restrictions upon the states adding qualifications in any form to the prerequisites for running for federal office. Although a state may be free to regulate individuals running for state office, it is not free to regulate the qualifications for federal office. *Deeb v. Adams*, 315 F.Supp. 1299 (N.D.Fla.1970).

■ The court has considered the relevant state interests as submitted by the Attorney General by way of exhibits. However, the court finds that these interests cannot outweigh the clear constitutional mandate that only the federal government can determine what qualifications are applicable for federal officeholders. Perhaps a more narrowly defined statute with more narrowly placed state interests could survive a constitutional challenge. However, the statute in question here clearly impedes the federal interests of uniform qualifications for federal officeholders and allowing the people of each state to have the broadest selection of qualified individuals to choose from in selecting federal officeholders. In doing so the statute violates Article I, Section 2, Clause 2, and Article I, Section 5, Clause 1 of the United States Constitution.

THEREFORE,

IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted and defendant's Motions to Dismiss or in the Alternative, Motions for Summary Judgment are denied.

IT IS FURTHER ORDERED that that portion of Arizona's Constitutional provision Article XXII, Section 18, is declared unconstitutional as it relates to salaried elected officeholders offering themselves for federal office.

IT IS FURTHER ORDERED that the plaintiff Conrad Joyner may run for the House of Representatives without having to resign from the Pima County Board of Supervisors.

IT IS FURTHER ORDERED that that portion of the plaintiff's Complaint alleging violations of 42 U.S.C. § 1983 is dismissed.

42 U.S.C. § 1983 requires that before a plaintiff may succeed in his action he must demonstrate that some person has deprived him of a federally protected right. Second, the plaintiff must allege that the person who deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Under the facts of this case no state official has acted in any way to deprive the plaintiff of any constitutionally protected right. The legislature has simply passed a law, potentially affecting the plaintiff, which has been declared unconstitutional, herein. Traditional absolute legislative immunity is applicable in 42 U.S.C. § 1983 lawsuits. *Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).