Conrad JOYNER, Plaintiff-Appellee,

v.

Rose MOFFORD, Secretary of State, State of Arizona; Robert K. Corbin, Attorney General, State of Arizona, Defendants-Appellants.

No. 82–5552.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1983.

Decided May 23, 1983.

Andrew M. Federhar, Bilby, Shoenhair, Warnock & Dolph, Tucson, Ariz., for plaintiff-appellee.

Russell A. Kolsrud, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellants.

Before GOODWIN and SNEED, Circuit Judges, and REED *, District Judge.

SNEED, Circuit Judge:

This case involves a challenge by Joyner to a provision of the Arizona Constitution which forbids certain state officials from remaining in office if they run for an elected federal position before the final year of their state term. The case was brought by Joyner to enjoin its enforcement against him.[1] The district court granted the relief Joyner sought and held that the Arizona provision is unconstitutional because it conflicts with the Qualifications Clause of Article I, Section 2 of the United States Constitution. 539 F.Supp. 1120. The State appeals. We reverse.

---

* Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

1. Joyner also sought relief under 42 U.S.C. § 1983. The district court dismissed this claim. Joyner does not appeal its dismissal.

## I.

## FACTS

Conrad Joyner is a member of the Board of Supervisors for Pima County, Arizona. His present term of office began on January 1, 1981, and ends on January 1, 1985. In 1982, Joyner ran an unsuccessful campaign in the Republican primary for nomination to the United States House of Representatives.

Article 22, § 18 of the Arizona Constitution was proposed by the Arizona Legislature in 1979, and approved by the voters at the 1980 general election. It provides:

> Except during the final year of the term being served, no incumbent of a salaried elective office, whether holding by election or appointment, may offer himself for nomination or election to any salaried local, state or federal office.

Under Arizona Revised Statutes §§ 12–2041 and 12–2042, the Arizona Attorney General and County Attorney may bring a *quo warranto* action against a state official who runs for federal office in violation of Article 22, § 18 to force him to resign from the state position and to declare that position to be vacant.

Joyner contended that Article 22, § 18 is unconstitutional. The district court granted Joyner's motion for summary judgment, holding that Article 22, § 18 is unconstitutional as it relates to salaried elective state officials offering themselves for federal office. The court ordered that Joyner be allowed to run for the House of Representatives without having to resign from the Pima County Board of Supervisors.

The State of Arizona appeals the district court's order and also argues that Joyner did not have standing to bring his action. Joyner, in addition to claiming that Article 22, § 18 is unconstitutional, also contends that we should dismiss the appeal because the case is now moot. We address the standing and mootness issues first, and then turn to the merits.

## II.

## STANDING

The State asserts that Joyner did not have standing to challenge the constitutionality of Article 22, § 18, except as applied to Joyner's own candidacy for federal office.

■ The standing doctrine derives from the "case or controversy" requirement of Article III of the United States Constitution, and "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Courts require a plaintiff to have a "personal stake" in the outcome of a case "to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99, 95 S.Ct. at 2204–05 (emphasis in original). To have such a "personal stake," a plaintiff must allege a "distinct and palpable injury to himself." *Id.* at 501, 95 S.Ct. at 2206. Such an injury can arise even from the burden of a statutory obligation. *Orr v. Orr,* 440 U.S. 268, 273, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979). In the present case, Joyner alleges a potential injury which is sufficient to meet the standing requirement—his obligation under Article 22, § 18 to resign or be removed from his state position if he runs for federal office.

■ The question then arises whether Joyner has standing to assert that Article 22, § 18 is unconstitutional as it applies to third parties, i.e., all salaried elective officeholders who might seek state or federal elective office. The State relies on *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), for the proposition that absent a few limited exceptions, *id.* at 611, 93 S.Ct. at 2915, appellants may not assert *jus tertii* standing. In that case, the Supreme Court held that a litigant may not assert the rights of third persons where he did not engage in the allegedly protected activity. *Id.* at 610, 93 S.Ct. at 2914. *See H.L. v. Matheson,* 450 U.S. 398, 405–06, 101 S.Ct. 1164, 1169, 67 L.Ed.2d 388 (1981). Al-

though, in the light of our disposition of this case on the merits, it is doubtful that our resolution of this standing issue will be of great significance, we hold that Joyner has standing to assert claims only with respect to himself and others in the State of Arizona who serve on Boards of Supervisors and who wish to stand for election to a federal office. Only with respect to that category of officials can it be said both that Joyner did in fact engage in the protected activity in which they might wish to engage, and that Joyner's complaint is identical to the complaint that they would assert when and if confronted by Arizona's bar to running for federal office before the final year of their state term. We adopt this position in the belief that it best accords with the prudential objective thought to underlie the restraints on assertions of *jus tertii*. *See Craig v. Boren*, 429 U.S. 190, 193, 97 S.Ct. 451, 454, 50 L.Ed.2d 397 (1976).

Nonetheless, the rule we enunciate in this case by its terms would embrace situations other than that presented by Joyner. To enunciate such a rule does not involve an issue of standing. When a rule by which a plaintiff's conduct is governed is broad enough to cover others engaged in somewhat similar activities, the fact that the plaintiff can assert only *his* rights under the rule does not thereby narrow the rule so as to make it not applicable to others when properly invoked. Joyner's lack of standing to assert all possible *jus tertii* merely means that those who rightfully assert them later are neither encumbered nor aided by res judicata or, perhaps, by collateral estoppel.

### III.

### MOOTNESS

Turning to the mootness issue, Joyner contends that this case has become moot since he lost the primary election and is no longer a candidate for Congress. He argues that this case is not covered by the principal exception to the mootness doctrine, that applicable to cases that are "capable of repetition, yet evading review." *See Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972). This case, he argues, is "capable of repetition" because the constitutionality of Article 22, § 18 could be tested, and thus not "evade review," whenever another elected Arizona official stands for federal office. We are not convinced.

Election cases like the present one come within the type of controversy that is "capable of repetition, yet evading review." "Evading review" for the purpose of the exception need not mean that review is impossible. It only means that in the ordinary course of affairs it is very likely to escape review. Appellate courts are frequently too slow to process appeals before an election determines the fate of a candidate. If such cases were rendered moot by the occurrence of an election, many constitutionally suspect election laws—including the one under consideration here—could never reach appellate review. *Id.; Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249 n. 5, 36 L.Ed.2d 1 (1973). This is enough to escape the brand of "mootness."

### IV.

### CONSTITUTIONALITY OF ARTICLE 22, SECTION 18

Joyner's complaint specifically alleges that Article 22, § 18 violates the Qualifications Clause of Article I, Section 2 of the United States Constitution, as well as the Equal Protection Clause of the Fourteenth Amendment.[2] The district court concluded

---

**2.** Joyner also claims that Article 22, § 18 infringes the First Amendment. A majority of the Supreme Court, however, held in *Clements v. Fashing*, ⸻ U.S. ⸻, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), that a "resign to run" statute similar to the one at issue here places an insignificant burden on an elected state officeholder's First Amendment rights. *Id.* at ⸻

⸻, 102 S.Ct. at 2848–49; *see also Morial v. Judiciary Commission of the State of Louisiana*, 565 F.2d 295 (5th Cir.1977); *Adams v. Supreme Court of Pennsylvania*, 502 F.Supp. 1282 (M.D.Pa.1980). The First Amendment attack therefore must fail.

In addition, Joyner alleges that the Arizona provision conflicts with the Fourth Amend-

that Article 22, § 18 is unconstitutional under the Qualifications Clause and did not reach the Equal Protection claim. We reverse the district court, and also hold that Article 22, § 18 does not conflict with the Equal Protection Clause.

## A. *Qualifications Clause Claim*

According to the Qualifications Clause, Article I, Section 2, Clause 2 of the United States Constitution:

> No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

From the beginning of the Republic, commentators have asserted that the three qualifications contained in the Clause—age, citizenship, and residency—are exclusive, and that neither Congress nor the states may require more of a candidate. *See, e.g.,* 1 J. Story, Commentaries on the Constitution 453–63 (5th ed. 1891).[3] In *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), the Supreme Court accepted this restrictive view of the Qualifications Clause—at least as applied to Congress—and held that members of Congress may not set extra-constitutional qualifications for taking a seat in the House of Representatives. In addition, as the district court observed in the present case, the same principle has frequently been applied to state laws imposing additional qualifications on candidates for federal office. 539 F.Supp. at 1121–22 & n. 1.

Neither Joyner nor the State disagrees with respect to these generalities. Joyner, quite understandably, asserts that Article 22, § 18 impermissibly conflicts with the Qualifications Clause because it imposes a fourth qualification on candidates for Congress—that they not hold elective office in Arizona unless they are in the last year of their term. The State, of course, disagrees. It argues that Article 22, § 18 does not add to the qualifications for federal office, but is an exercise of Arizona's plenary power to regulate the conduct of its own elected officials. We hold that Arizona's position is correct.

 The courts considering challenges to state laws relying on the Qualifications Clause have distinguished between state provisions which bar a potential candidate from running for federal office, and those which merely regulate the conduct of state officeholders. The former category of laws imposes additional qualifications on candidates and therefore violates the Qualifications Clause, while the latter category is constitutionally acceptable since it merely bars state officeholders from remaining in their positions should they choose to run for federal office. The burden on candidacy, imposed by laws of the latter category, is indirect and attributable to a desire to regulate state officeholders and not to impose additional qualifications to serving in Congress.

For example, in *State ex rel. Pickrell v. Senner,* 92 Ariz. 243, 375 P.2d 728 (1962), the Arizona Supreme Court held that an Arizona law was unconstitutional because it provided, in part, that incumbent state of-

---

ment, the Due Process Clause of the Fifth and Fourteenth Amendments, and the Privileges and Immunities Clause of the Fourteenth Amendment. These claims are wholly without merit. Article 22, § 18 infringes neither the Fourth Amendment nor the Privileges and Immunities Clause. Moreover, it does not deprive Joyner of property or liberty without due process of law since, as Justice Stevens points out in *Clements v. Fashing,* "a State [may] define the benefits and burdens of different elective state offices in any particular manner." 102 S.Ct. at 2849 (Stevens, J., concurring). *See Stack v. Adams,* 315 F.Supp. 1295, 1297 (N.D. Fla.1970); *cf. Snowden v. Hughes,* 321 U.S. 1,

64 S.Ct. 397, 88 L.Ed. 497 (1944). That Arizona does not define the phrase "offer[s] himself for nomination" does not render Article 22, § 18 unconstitutionally vague. *See United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 576–80, 93 S.Ct. 2880, 2895–97, 37 L.Ed.2d 796 (1973).

3. For a thorough survey of the origins and construction of the Qualifications Clause, *see Powell v. McCormack,* 395 U.S. 486, 522–48, 89 S.Ct. 1944, 1964–78, 23 L.Ed.2d 491 (1969); *see also State ex rel. Johnson v. Crane,* 65 Wyo. 189, 197 P.2d 864 (1948).

ficeholders would not be eligible for federal office, and that their nomination papers would not be accepted for filing. Similarly, in *State ex rel. Santini v. Swackhamer,* 90 Nev. 153, 521 P.2d 568 (1974), the court concluded that the Nevada Secretary of State could not refuse to allow a state judge to file for election to the House of Representatives. Finally, in *Lowe v. Fowler,* 240 Ga. 213, 240 S.E.2d 70 (1977), an Atlanta city charter provision barring the President of the City Council from qualifying for another office was held not to apply to a candidate for Congress.[4]

In contrast, the latter category of laws appears in a series of recent decisions in which courts have upheld against a Qualifications Clause attack state laws which do not disqualify a state officeholder from running for federal office, but which require the officeholder to resign or be removed from the state office should he seek election to Congress.

In *Signorelli v. Evans,* 637 F.2d 853 (2d Cir.1980), the court rejected a challenge to a New York law requiring state judges to resign from the judiciary before running for political office. The court noted that although the New York law places an indirect burden—resignation—on potential candidates, it does not prevent judges from seeking federal office. The court held that an indirect burden on candidacy might not constitute an unconstitutional qualification if the burden "is designed to deal with a subject within traditional state authority," such as the state's regulation of its judges, where its power is plenary. *Id.* at 859.[5] Other courts have adopted similar reasoning. In *Alex v. County of Los Angeles,* 35 Cal.App.3d 994, 111 Cal.Rptr. 285 (1974), the court upheld a California law requiring judges to take a leave of absence if they run for other public offices. The court explained that the law did not make judges ineligible for election to Congress, and that the loss of judicial salary during a leave of

---

4. Most of the cases cited by Joyner follow a similar pattern of holding that state laws rendering officials ineligible for state office are unconstitutional qualifications. *See, e.g., Stockton v. McFarland,* 56 Ariz. 138, 106 P.2d 328 (1940) (state judge not eligible for federal office); *Buckingham v. State ex rel. Killoran,* 42 Del. 405, 35 A.2d 903 (1944) (state judges forbidden from running for other positions until six months after the expiration of their term) (dictum); *State ex rel. Handley v. Superior Court of Marion County,* 238 Ind. 421, 151 N.E.2d 508 (1958) (governor not eligible for United States Senate); *Riley v. Cordell,* 200 Okla. 390, 194 P.2d 857 (1948) (state supreme court justice not eligible to run for nonjudicial position); *Ekwall v. Stadelman,* 146 Or. 439, 30 P.2d 1037 (1934) (state judge not allowed to file for nonjudicial office); *In Re Opinion of the Judges,* 79 S.D. 585, 116 N.W.2d 233 (1962) (governor and lieutenant governor not eligible for other office during term) (advisory opinion); *State ex rel. Chandler v. Howell,* 104 Wash. 99, 175 P. 569 (1918) (state judge not eligible for other office); *State ex rel. Wettengel v. Zimmerman,* 249 Wis. 237, 24 N.W.2d 504 (1946) (state judge not eligible for nonjudicial office); *State ex rel. Johnson v. Crane,* 65 Wyo. 189, 197 P.2d 864 (1948) (governor not allowed to file for election to Senate).

Other cases holding laws to be unconstitutional qualifications because they render candidates ineligible for federal office include *Dillon v. Fiorina,* 340 F.Supp. 729 (D.N.M.1972) (candidate must have been registered with political party for at least one year prior to filing date to be eligible to run in party primary); *Exon v. Tiemann,* 279 F.Supp. 609 (D.Neb.1968) (candidates for House of Representatives must reside in the congressional district in which they are nominated); *Hellman v. Collier,* 217 Md. 93, 141 A.2d 908 (1958) (same); *Shub v. Simpson,* 196 Md. 177, 76 A.2d 332 (Md.App.1950) (candidates must file anti-subversion declaration to be eligible for office); *Danielson v. Fitzsimmons,* 232 Minn. 149, 44 N.W.2d 484 (1950) (convicted felon cannot qualify for federal office); *State ex rel. Eaton v. Schmahl,* 140 Minn. 219, 167 N.W. 481 (1918) (same); *State ex rel. Chavez v. Evans,* 79 N.M. 578, 446 P.2d 445 (1968) (candidates for House of Representatives must reside in the congressional district in which they are nominated); *In Re O'Connor,* 173 Misc. 419, 17 N.Y.S.2d 758 (1940) (communist felon not allowed to file for election to Congress); *State ex rel. Sundfor v. Thorson,* 7 N.D. 246, 6 N.W.2d 89 (1942) (candidate defeated in primary not eligible to run for same office in general election).

5. The *Signorelli* court also suggested that the separation of powers justifications for the New York provision might be analogized to those supporting the Incompatibility Clause of Article I, Section 6 of the United States Constitution. 637 F.2d at 859–63. This analogy, while intriguing, is dictum, and we need not follow *Signorelli* here.

absence for a campaign constitutes too minor a burden on candidacy to be a qualification. And in *Oklahoma State Election Board v. Coats,* 610 P.2d 776 (Okla.1980), the Oklahoma Supreme Court held constitutional a state law forbidding district attorneys from running for an office which overlaps with their term of service. The court emphasized that the law in question was a state law designed to regulate state officeholders. *See also Adams v. Supreme Court of Pennsylvania,* 502 F.Supp. 1282 (M.D.Pa. 1980) (upholding a Pennsylvania law requiring state judges to resign before becoming a candidate for Congress).

Joyner argues, however, that the *Signorelli* line of cases applies only to judges, and not to nonjudicial officeholders. He also contends that Article 22, § 18 is unconstitutional under the authority of *Davis v. Adams,* 400 U.S. 1203, 91 S.Ct. 1, 27 L.Ed.2d 20 (Black, Circuit Justice, 1970). These arguments are not convincing.

First, *Signorelli* does not stand for the proposition that the only acceptable "resign to run" statutes are those that apply to judges. Instead, the *Signorelli* court distinguished between regulations which are constitutionally permissible because they affect "specified state offices peculiarly within the essential regulatory authority of the states," and statutes placing "restrictions upon a broad range of occupations," which are constitutionally suspect. 637 F.2d at 859. Within the former category fall regulations such as Article 22, § 18, since, like the civil servants affected by the Hatch Act cases, the elected salaried state officials covered by the Arizona provision are within the State's "essential regulatory authority." [6] *See Broadrick v. Oklahoma,* 413 U.S. 601, 606, 93 S.Ct. 2908, 2912, 37 L.Ed.2d 830 (1973) (state can prevent members of civil service from running for elective office); *see also United States Civil Service Commission v. National Association of Letter*

*Carriers,* 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973) (federal civil service). An Oklahoma court has taken this position in upholding a "resign to run" statute applying not to judges, but to district attorneys. *See Oklahoma State Election Board v. Coats,* 610 P.2d 776 (Okla.1980).

Second, Joyner's reliance on Justice Black's "in chambers" opinion in *Davis* does not carry the day. *Davis* involved a Florida law which provided that no state officeholder could qualify for election to another office unless he had first resigned from the state position—a "resign to qualify to run" statute. The Florida Secretary of State refused to allow two sheriffs and a mayor who wanted to run for the House of Representatives to file for election. The Florida Supreme Court upheld the actions of the Secretary of State, *State ex rel. Davis v. Adams,* 238 So.2d 415 (Fla.1970), but a three-judge federal district court invalidated the Florida law as applied to candidates for federal office, *Stack v. Adams,* 315 F.Supp. 1295 (N.D.Fla.1970). Justice Black granted a stay of the Florida Supreme Court decision to allow the state officials to run in the primary election.

*Davis,* however, was not a decision on the merits, and therefore lacks precedential value. *See Locks v. Commanding General, Sixth Army,* 89 S.Ct. 31, 32, 21 L.Ed.2d 78 (Douglas, Circuit Justice, 1968). Moreover *Davis* is distinguishable from the present case. For example, the Florida law at issue in *Davis* prevented a state official from *qualifying* for an election without having already resigned from state office, while Article 22, § 18 does not forbid an official from filing for candidacy. Finally, Justice Black's statement in *Davis* that he is "inclined to think that the [Supreme] Court would hold that Florida has exceeded its constitutional powers," 400 U.S. at 1204, 91 S.Ct. at 2, has been undercut by recent Supreme Court decisions concerning the

---

**6.** The *Signorelli* court was concerned that a state might use its regulatory authority, for example, "to require lawyers to resign from the bar or business executives to resign corporate offices prior to seeking public office." 637 F.2d at 859. The state would not have the authority to do this, however, despite the state's "acknowledged authority to regulate occupations," since, unlike state officeholders, lawyers and business executives are not engaged in pursuits "*peculiarly* within the essential regulatory authority of the states." *Id.* (emphasis added).

power of states to regulate the conduct of elections. *See, e.g., Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1973) (California law denying a place on the ballot to independent candidates who had registered with a party within one year prior to the immediately preceding primary election does not violate the Qualifications Clause); *see also Clements v. Fashing,* —— U.S. ——, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

▮ In sum, we conclude Article 22, § 18 does not impose a fourth qualification on candidates for Congress because it does not prevent an elected state officeholder from running for federal office. Nor does it prohibit the filing for nomination to Congress by an elected state officeholder: The Arizona Secretary of State allowed Joyner to file for nomination for Congress. It merely requires that Joyner resign or be removed from office if he wishes to "offer himself for nomination or election" to Congress. It regulates the conduct of state officials by requiring those officeholders who run for other positions before the final year of their term to resign or be removed from their state office. Admittedly this is an indirect burden on potential candidates for Congress; it is not sufficient, however, to constitute an impermissible qualification for federal office. *Signorelli,* 637 F.2d at 859, 863; *Alex,* 35 Cal.App.3d at 1007–08, 111 Cal.Rptr. at 294. As an early Kansas court noted:

> While we cannot interfere with the tenure of office which the United States may prescribe for its officers, it is clearly within our province to declare what effect the acceptance of such an office will

have on the tenure of an officer of the State . . . when that is declared by the [State] constitution . . .

*State ex rel. Watson v. Cobb,* 2 Kan. 32, 58 (1863) (upholding in dictum state constitutional provision vacating seat of member of state legislature or judiciary who is elected to Congress).

**B.** *Equal Protection Claim*

▮ Related to and overlapping with Joyner's Qualifications Clause claim is his Equal Protection challenge to Article 22, § 18. Under traditional equal protection analysis, legislative classifications—even those made pursuant to a state's exercise of its plenary power over state officials—are subject to varying degrees of judicial scrutiny. Normally, courts will focus on whether the classifications are rationally related to furthering a legitimate state interest. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). Two exceptions to this minimum rationality standard require a stricter degree of scrutiny: when classifications disadvantage a suspect class,[7] or when they impinge upon the exercise of a fundamental right. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95 & n. 15, 72 L.Ed.2d 786 (1982).

▮ In undertaking our analysis of Article 22, § 18, we are guided by the recent Supreme Court decision, *Clements v. Fashing,* —— U.S. ——, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). In that case, the Court rejected an Equal Protection challenge brought by several state officials to a "resign to run" provision in the Texas Constitution, similar to Arizona's Article 22, § 18.[8] The *Clements* plurality explained:

---

**7.** Although Article 22, § 18 creates a classification which distinguishes between elected state officeholders who want to run for another office before the final year of their term and all other persons, that classification does not disadvantage a suspect class. *Cf. Clements v. Fashing,* —— U.S. ——, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (classification distinguishing between certain state officeholders and all other state officials in eligibility for election to state office is not suspect); *Morial v. Judiciary Commission of the State of Louisiana,* 565 F.2d 295, 304–06 (5th Cir.1977) (judges and other

officeholders). We therefore subsume our analysis of whether Article 22, § 18 disadvantages a class of individuals in our discussion of its burden on candidacy.

**8.** Article XVI, § 65 of the Texas Constitution provides that a declaration of candidacy for another office by certain state officials except in the last year of their term shall constitute automatic resignation from their office. 102 S.Ct. at 2842. The *Clements* Court also considered another Texas provision, Article III, § 19, which regulates eligibility for the Texas legislature. *Id.*

In assessing challenges to state election laws that restrict access to the ballot, this Court has not formulated a "litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause." *Storer v. Brown,* 415 U.S. 724, 730 [94 S.Ct. 1274, 1279, 39 L.Ed.2d 714] (1974). Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions. *Ibid.; Williams v. Rhodes,* 393 U.S. 23, 30 [89 S.Ct. 5, 10, 21 L.Ed.2d 24] (1968).

*Id.* at —— ——, 102 S.Ct. at 2843–44. We have considered these factors carefully, and we conclude that Article 22, § 18 advances substantial and important state interests, while placing a minimal burden on potential candidates for federal office. Thus, we hold that Article 22, § 18 would pass constitutional muster under both the strict scrutiny test as well as the minimum rationality standard, and therefore do not need to determine the appropriate standard of review.[9] *See Alex v. County of Los Angeles,* 35 Cal.App.3d 994, 1001, 111 Cal.Rptr. 285, 289 (1974) ("resign to run" law survives both strict scrutiny and minimum rationality tests); *Oklahoma State Election Board v. Coats,* 610 P.2d 776, 781 (Okla.1980) (same). *See also Stack v. Adams,* 315 F.Supp. 1295, 1297 (N.D.Fla. 1970).

Our conclusion is buttressed by the analysis of Article 22, § 18 made by the Arizona Legislative Council for the 1980 referendum in which the provision was adopted. According to this analysis, there are four principal justifications for the rule. First, it encourages an elected public official to devote himself exclusively to the duties of his office. Second, Article 22, § 18 reduces the possibility of public subsidies for officials who are merely using public office as a "stepping stone." Third, the provision prevents abuse of office before and after an election.[10] Finally, it protects the expectations of the electorate in voting a candidate into state office.[11]

---

None of the litigants in *Clements v. Fashing* sought to run for federal office. The Court therefore did not look at the Texas laws in the context of the Qualifications Clause.

**9.** We note that a plurality of the Supreme Court held that fundamental rights are infringed by classifications restricting access to the ballot in only two types of cases: where classifications are based on wealth, *see Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), and where classifications impose burdens on new or small political parties or independent candidates, *see Illinois Elections Board v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). *Clements v. Fashing,* —— U.S. ——, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (plurality opinion). Under this analysis, the provision at issue here would not burden a fundamental right, since it does not create classifications based on wealth or impose burdens on new or small political parties or independent candidates. Thus, there should probably be no need to depart from the traditional minimum rationality standard of review in considering Article 22, § 18.

**10.** As Arizona explains at pages 31–32 of its Opening Brief:

A not insubstantial number of persons may contribute or pledge money to Joyner's campaign not because they think he will win, but because they think he may lose.... These are the persons whose affairs can be affected, sometimes significantly, by Board of Supervisors' actions, as on zoning, for instance. These persons may contribute or pledge to Joyner's campaign to assure that Joyner will view them with favor (or at least bear them no animus) when they ... may be affected by Board of Supervisors' actions. This incentive to give to Joyner's campaign will be nowhere near as strong if Joyner were in the last year of his office's term. He would then not have as much time to use his incumbent office after his loss at the primary or general election to bestow as many benefits or impose as much ill effect upon the person solicited. While the Arizona provision, with its last year's exception, does not entirely eliminate opportunities for abuse of office, it tends substantially to reduce their number.

**11.** The *Clements v. Fashing* Court justified the Texas provisions at issue in that case in strikingly similar terms to Arizona's reasoning here. 102 S.Ct. at 2846.

These justifications are substantial, and reflect a legitimate and compelling state interest in orderly, consistent, and honest government.[12] *Cf. Anderson v. Celebrezze,* —— U.S. ——, 103 S.Ct. 1564 & n. 9, 75 L.Ed.2d 547 (1983). That Article 22, § 18 excepts from its coverage officials in the last year of their term does not detract from the provision, since the "last year" exception represents a reasonable compromise between the not unusual desire of an officeholder to seek a higher office and the substantial and legitimate interests of the state.

We recognize that the burden the Arizona provision imposes on potential candidates is not inconsequential. However, Article 22, § 18, to repeat ourselves, does not prevent Arizona officials from becoming candidates for other offices. It merely requires that they not occupy a state office while seeking either a state or federal elective office. At worst it imposes upon officeholders a loss of income and the possibility of being without public office. These burdens are easily outweighed by the benefits of the Arizona provision.

The judgment of the district court is reversed.

REVERSED.

---

12. We do not believe that Arizona could achieve these interests by means of a "less restrictive alternative." Using a recall initiative or voting the errant official out of office would be a clumsy and often ineffective means of promoting the state interests. Having state officials take a leave of absence during a campaign, *see Alex v. County of Los Angeles,* 35 Cal.App.3d 994, 111 Cal.Rptr. 285 (1974), would deprive Arizona of the services of its officials for lengthy periods.

