Toraki MATSUMOTO, et al.,
Plaintiffs-Appellants,

v.

Raymond K. PUA, City Clerk, City and County of Honolulu,
Defendant-Appellee,

and

Democratic Party of the State of Hawaii, and James Kumagai, Intervenors-Defendants-Appellees.

Toraki MATSUMOTO, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES DISTRICT COURT for the DISTRICT OF HAWAII,
Respondent,

and

Raymond K. Pua, City Clerk, City and County of Honolulu, Real Party in Interest,

and

Democratic Party of the State of Hawaii, and James Kumagai,
Real Parties in Interest.

Nos. 85–2728, 85–7568.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 25, 1985.

Decided Nov. 12, 1985.

**1394**

Boyce R. Brown, Cynthia H.H. Thielen, Brown & Johnston, Richard D. Wurdeman, A. Edward Fyffe, Honolulu, Hawaii, for plaintiffs-appellants.

Jerrold Guben, Honolulu, Hawaii, for defendant-appellee.

Before KENNEDY, HUG, and SKOPIL, Circuit Judges.

HUG, Circuit Judge:

Three former Honolulu City Councilmen and their supporters seek emergency relief to allow the councilmen to run in a special election to fill the vacancies created by their recent recall from office. The city clerk maintains that the councilmen are barred from running in the special election by a provision of the city charter that disqualifies recalled city officials from election or appointment to city office for two years after their recall. The district court declined to grant preliminary injunctive relief. On October 28, we entered an order remanding and directing the district court to issue a preliminary injunction prohibiting the city clerk from relying on the two-year disqualification provision as a basis for disqualifying the councilmen from the special election. The order stated that a formal opinion would follow explaining the reasons for the decision; that is the purpose of this opinion.

## FACTS

Honolulu City Councilmen Toraki Matsumoto and George Akahane were recalled from office in an election held on October 5, 1985. Councilman Rudy Pacarro was also apparently recalled, although this issue is disputed.[1] Matsumoto had served on the city council for seventeen years, and Akahane and Pacarro had served for fifteen years.

Before the recall election, the councilmen and a number of their supporters filed an action in federal district court to enjoin the city clerk from holding the election. They contended that the city recall scheme was unconstitutional because the city charter barred recalled officers from elective or appointed city office for two years after their recall.[2] They also asserted pendent state law fraud claims.

On September 3, 1985, the district court ruled that the constitutionality of the two-year disqualification was not ripe for adjudication because the councilmen had not yet been recalled from office. The district court also granted leave to intervene as defendants to the Democratic Party of Hawaii and to the Chairman of the Democratic Party, James Kumagai. The court subsequently dismissed the pendent state law claims.

After the recall election, plaintiffs requested the district court to rule on the constitutionality of the two-year disqualification. The city clerk, Raymond Pua, stated in an affidavit that he would not allow the councilmen to run in the special election to fill the vacancies created by their recall because of the two-year disqualification provision. Plaintiffs asked the district court to enjoin the clerk to allow the councilmen to run in the special election.

On October 15, 1985, the district court, sitting en banc, declined to issue a tempo-

---

**1.** Whether or not a majority of the electorate voted to recall Pacarro is the subject of a pending original proceeding in the Hawaii Supreme Court. We would ordinarily decline to address Pacarro's request for emergency relief until the state supreme court decided whether he was recalled. Plaintiffs' counsel has informed us, however, that the state court matter is unlikely to be heard until after the special election. Moreover, Matsumoto and Akahane were clear-

ly recalled, and their claims are essentially identical to those of Pacarro.

**2.** The relevant provision states: "No person, who has been removed from his elected office or who has resigned from such an office after a recall petition directed to him has been filed, shall be eligible for election or appointment to any office of the city within two years after his removal or resignation." Honolulu City Charter, '12–103.

rary restraining order requiring the clerk to put the councilmen's names on the special election ballot. Judge King wrote the majority opinion, and was joined by Judge Pence. Judge Fong wrote a dissenting opinion. The majority opinion stated that the district court need not address the constitutionality of the two-year disqualification, because even if this provision were repealed, "a state court might interpret 'recall' to mean that a recalled office holder could not be a candidate at the special election called to fill the vacancy created by his recall." The majority of the court found that "[u]nder any test, a prohibition against a recalled office holder standing for election to fill the vacancy created by his recall would not by itself violate any provision of the United States Constitution." Accordingly, the majority of the district court held that plaintiffs were not likely to succeed on their claim that the councilmen should be able to run in the special election, and found that a temporary restraining order would be inappropriate.

On the same day as the district court decision, the city council scheduled a special election for November 30, 1985, and set the deadline for filing nomination forms as October 26, 1985. This deadline was subsequently extended until October 29, 1985.

On October 21, 1985, plaintiffs filed in this court an emergency petition for mandamus relief or, in the alternative, appellate review. Plaintiffs sought a writ of mandamus directing the district court to rule on the constitutionality of the two-year disqualification. The following day the district court entered an order recharacterizing its decision as a denial of a preliminary injunction. Plaintiffs then filed a notice of appeal and a motion for an injunction pending appeal.

Counsel for the City and County originally filed a memorandum stating that the city clerk joined the mandamus petition. This was later retracted. At oral argument, counsel for the City and County made clear that the clerk does not join the petition or the appeal, and will enforce the two-year disqualification provision of the charter unless otherwise ordered by a court. Intervenors, the Democratic Party of Hawaii and the Democratic Party Chairman, Kumagai, oppose both the mandamus petition and the motion for an injunction pending appeal.

## PROCEDURAL POSTURE

We first clarify the procedural posture of this case. This case originally came before us on plaintiffs' petition for a writ of mandamus. Plaintiffs subsequently filed an appeal and a motion for an injunction pending appeal. With an appeal of the denial of the injunctive relief before us, mandamus review is inappropriate. Accordingly, the mandamus proceeding and the appeal are consolidated, and the mandamus petition is denied.

Plaintiffs seek an injunction pending appeal that would require the city clerk to allow the councilmen to run in the special election. Because the special election is imminent, the grant or denial of an injunction pending appeal will effectively dispose of the appeal. Therefore, we decide the appeal on its merits.

## STANDARD OF REVIEW

■ We will reverse the denial of a preliminary injunction only if the district court abused its discretion, or based its decision on an incorrect legal standard or a clearly erroneous finding of fact. *Aleknagik Natives Limited v. Andrus*, 648 F.2d 496, 501 (9th Cir.1980). The district court should grant a preliminary injunction if plaintiffs show either: (1) probable success on the merits and a possibility of irreparable injury; or (2) sufficiently serious questions on the merits as to make them fair ground for litigation and a balance of hardships tipping decidedly in plaintiffs' favor. *See id.* at 501–02. These two tests are not separate, but "merely extremes of a single continuum." *Id.* at 502.

## CONSTITUTIONALITY OF THE TWO-YEAR DISQUALIFICATION

It is clear, as the district court acknowledged, that the plaintiffs will suffer irrepa-

rable injury if the plaintiffs are ultimately found to have been entitled to run in the election, but were deprived from doing so because of the enforcement of the two-year disqualification provision in the city charter. Thus, if the plaintiffs established that they will probably succeed on the merits, then it would have been an abuse of discretion for the district court to have denied the preliminary injunction.

The district court found that it need not address the constitutionality of the two-year disqualification to decide plaintiffs' motion for a preliminary injunction. The court reasoned that even if the disqualification provision were repealed, a state court might interpret the city charter as implicitly banning the councilmen from running to fill the vacancies created by their own recall from office.

█ We hold that the district court erred in declining to address the constitutionality of the two-year disqualification. The only provision relied on by the city clerk for his refusal to allow the councilmen to participate in the special election is the two-year disqualification. The clerk has expressed no view as to whether any other provision of the charter would ban such participation. The issue of whether the councilmen would be ineligible to run in the special election in the absence of the two-year disqualification is thus not ripe for adjudication.[3] Moreover, it would be particularly inappropriate to address this issue at this time because it depends on interpretation of the city charter, an issue of state law.[4] The only issue properly before this court is whether the clerk may constitutionally rely on the two-year disqualification to bar the councilmen from the special election.

█ Turning to the merits of the plaintiffs' appeal, we find that plaintiffs have shown that they are likely to succeed on their claim that the two-year disqualification is unconstitutional. The Supreme Court has indicated that restrictions on the right to run for public office must be carefully examined, particularly when they impose significant burdens on the right of voters to cast ballots for the candidate of their choice, or on the candidate's rights under the First Amendment and the equal protection clause. *See, e.g., Anderson v. Celebrezze,* 460 U.S. 780, 786–89, 103 S.Ct. 1564, 1568–70, 75 L.Ed.2d 547 (1983); *Bullock v. Carter,* 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). The Supreme Court has identified no single constitutional standard to apply to restrictions on candidacy; rather, the Court's decisions suggest that the level of scrutiny may depend on the nature of the restriction. *See, e.g., Anderson,* 460 U.S. at 789, 103 S.Ct. at 1570; *Clements v. Fashing,* 457 U.S. 957, 963–66, 102 S.Ct. 2836, 2843–45, 73 L.Ed.2d 508 (1982) (plurality decision); *see also Joyner v. Mofford,* 706 F.2d 1523, 1531–32 (9th Cir.) (noting the existence of different levels of scrutiny, but finding it unnecessary to decide the level of scrutiny applicable to a law requiring certain state officials to resign from office before running for federal office because the law would pass constitutional muster under any test), *cert. denied,* —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). In its most recent decision, a majority of the Supreme Court endorsed a flexible standard that weighs "the character and the magnitude of the asserted injury" to plaintiffs' constitutional rights against the "legitimacy and strength" of the government's asserted in-

---

**3.** The intervenors have argued that the charter would bar the councilmen from the special election even if the two-year disqualification were held unconstitutional. The intervenors' position, however, does not create a justiciable case or controversy. The injunctive relief sought by plaintiffs applies only to the city clerk, who is charged with determining the eligibility of candidates for city office. Intervenors have no authority to refuse to place the councilmen on the ballot for the special election.

**4.** The intervenors themselves argue that the proper forum for adjudicating issues of state law is the state court, and not the federal court.

We note that the clerk has not asked for declaratory relief concerning the interpretation of the charter. We also note that the parties have informed us that state law provides a procedure by which the clerk may hold a hearing to determine the eligibility of candidates to run for office.

terests and "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570.

We find that the two-year disqualification provision of the Honolulu City Charter imposes a severe burden on the rights of recalled city officials and their supporters that does not appear to be justified by any substantial or important government interests. The provision erects an absolute bar to the ability of recalled officials to run for election to any city office within two years of their recall. Because city council elections are held only at four-year intervals and the next election is in 1986, this bar operates in the present case to prevent the three former councilmen from seeking to regain office until 1990, a five-year wait. The councilmen's supporters must also wait five years before they can express their support in city elections. Moreover, the two-year disqualification provision burdens the first amendment rights of elected officials in that an official who takes a controversial position risks not only being recalled from office, but also being barred from election or appointment to any city office for at least two years. The only substantial justification asserted for the two-year bar from any elective or appointive city office is that it is an appropriate sanction that will make city officials more responsive to the electorate.

The city charter does not require a showing of malfeasance in office to initiate a recall election. Indeed, all parties to the present action agree that the three councilmen were removed from office by an announced change in political philosophy, not any malfeasance in office. It is highly doubtful that the political processes are in any way advanced by preventing an officeholder who is removed from office by a vote of the people because of an unpopular decision from seeking any elective office for two years. Public views of issues and candidates change. The elective process is designed to reflect the changing views of the people. This charter provision would prevent the public from reflecting through the elective process any change in views as to these candidates and the positions they espouse for at least two years. This is counter to the alleged goal of responsiveness to the will of the people. The serious restrictions imposed on the rights of candidates to run for office and rights of voters to cast their ballots for the candidates of their choice find minimal justification in the governmental interests asserted.

Intervenors argue that regardless of the constitutionality of the two-year disqualification as a whole, it should be held constitutional insofar as it prohibits the councilmen from running in the special election to fill the vacancies created by their own recall. The two-year disqualification, however, applies equally to election to any city office; it makes no distinction between the special election to fill the vacancies created by recall and any other elections. It is the function of the courts to interpret the charter provision as it was written, not as it might have been written. Thus the provision barring a recalled officer from seeking any elective city office for two years must be either constitutional or unconstitutional as it is written.[5] Accordingly, we do not address the issue of the constitutionality of a limited ban against recalled office holders running to fill the vacancies created by their own recall.

Because plaintiffs appear likely to succeed on their claim that the two-year disqualification of recalled city officials from election to city office is unconstitutional, we reverse and remand to the district court with instructions to enter a preliminary injunction in favor of the plaintiffs. The injunction shall prohibit the clerk from relying on the two-year disqualification as a ground for refusing to allow the three councilmen to run in the special election to fill the vacancies created by their recall.

**5.** We express no view as to the constitutionality and severability of the part of the two-year disqualification provision that disqualifies recalled city officials from appointment to city office. This issue is not presented by plaintiffs' motion for emergency relief, although it may be relevant to the underlying action.

The injunction shall be limited solely to the paragraph of section 12–103 of the Honolulu City Charter that bars recalled office holders from election to city office for two years. We express no view as to whether any other provision of the charter prohibits the councilmen from running in the special election, or as to the constitutionality of a limited ban against recalled city officials running to fill the vacancies created by their recall. We hold only that plaintiffs are likely to succeed on their claim that the two-year disqualification provision is unconstitutional, and are thus entitled to a preliminary injunction prohibiting reliance on that provision as a basis for excluding the councilmen from the special election.

REMANDED FOR ENTRY OF PRELIMINARY INJUNCTION.