STATE OF NEVADA, ON THE RELATION OF JAMES D. SANTINI, PETITIONER, v. WILLIAM D. SWACK-HAMER, SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

No. 7642

April 12, 1974                                    521 P.2d 568

*George Rudiak, Chartered,* of Las Vegas, for Petitioner.

*Robert List,* Attorney General, and *Donald Klasic,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

At the general election in November, 1972, petitioner Santini was elected a judge of this state's Eighth Judicial District

Court, with a term ending the first Monday in January, 1975. On March 8, 1974, petitioner resigned and, on March 12, he presented to the respondent Secretary of State a declaration of candidacy for the office of Representative in the Congress of the United States, to seek nomination for such office in the forthcoming Democratic primary election. The Secretary of State refused to accept and file this declaration on the ground that petitioner is ineligible under Article 6, § 11 of our Nevada Constitution, which provides:

"*Judges ineligible to other offices.* The justices of the supreme court and the district judges shall be ineligible to any office, other than a judicial office, during the term for which they shall have been elected or appointed; and all elections or appointments of any such judges by the people, legislature, or otherwise, during said period, to any office other than judicial, shall be void."

Petitioner therefore asks this Court to issue a writ of mandamus, compelling the Secretary of State to accept his declaration of candidacy and filing fee, in order that his name may be placed on the primary ballots in the several counties of this state. Accordingly, we must determine whether Art. 6, § 11 of the Nevada Constitution may and should be construed and applied to preclude petitioner from seeking and holding the federal office in question.

Of course, the words "any office" in Art. 6, § 11 of the Nevada Constitution arguably might refer not merely to "any office" under our state government, but to "any office" under either the state or federal government. Indeed, it is quite consistent with our Constitution's language to assume that Art. 6, § 11 was intended to control federal and state offices, whether appointive or elective. If such assumption be made, then it would seem Nevada's founding fathers undertook not only to decree who might serve the United States as Senator, Representative, President, or Vice President, but also who should be eligible or ineligible to such offices as Ambassador, Attorney General, Solicitor General, U.S. Attorney, and Director of the F.B.I. We are satisfied that some narrower construction must be accorded the words "any office" than this broad but quite literal interpretation of that phrase.

Available evidence indicates that those who framed Nevada's Constitution did not contemplate that Art. 6, § 11 would, or could, control eligibility to federal office. From the Reports of the 1863 Constitutional Convention of the Territory of Nevada, it appears that words which would have made Art. 6, § 11 expressly applicable to federal elective offices were

eliminated by the Convention, following discussion of their presumed unconstitutionality under the U.S. Constitution.[1] And in eliminating such language from our state Constitution, it seems Nevada's founders acted in accord with recognized doctrine because, in the very earliest days of our nation, Mr. Justice Story of the United States Supreme Court had made this often quoted pronouncement:

"The truth is, that the States can exercise no powers whatsoever, which exclusively spring out of the existence of the national government, which the Constitution does not delegate to them. They have just as much right, and no more, to prescribe new qualifications for a representative, as they have for a President. Each is an officer of the Union, deriving his powers and qualifications from the Constitution, and neither created by, dependent upon, nor controllable by the States. It is no original prerogative of State power to appoint a representative, a senator, or President for the Union. Those officers owe their existence and functions to the united voice of the whole, not of a portion of the people. Before a state can assert the right, it must show that the constitution has delegated and recognized it. No state can say that it has reserved what it never possessed." 1 Story on the Constitution, 5th Ed. § 627.

Throughout ensuing history, it seems that every constitutional scholar who has discussed the question has endorsed Justice Story's view.[2] With one exception, every court wherein

---

[1] As proposed in the 1863 Constitutional Convention, the Article on the Judiciary contained a section identical to Art. 6, § 11, except that it originally concluded with the following phrase: ". . . whether such office be created by the Constitution and laws of the State or the Constitution or laws of the United States." In response to an inquiry concerning what offices the words "or the Constitution or laws of the United States" referred to, one delegate observed that "the only intention was to render judges ineligible to the office of United States Senator." Thereupon, a motion was made "to strike out the words, on the ground that the Constitution of a State could not prescribe the qualifications of a Senator." At the time, the motion failed. *Reports of the 1863 Constitutional Convention* 220 (1972 Ed.). However, although the mechanics do not clearly appear, it does appear that ultimately the views of those favoring deletion of the phrase in contention prevailed. The phrase ultimately was deleted, apparently during final corrections and amendments which were not reported verbatim, but which are reflected by the proposed 1863 Constitution's final form. See: *Id.*, at 427. As finally agreed to in 1863, the section just discussed was the progenitor of Art. 6, § 11 of our present Constitution.

[2] See, for example: 1 *Kent's Commentaries* 229 (12th Ed. 1873); Cooley, *General Principles of Constitutional Law in the United States of America* 285, 290 (3rd Ed. 1898); Burdick, *The Law of the American Constitution* § 64.

the question has directly been litigated has held in accord.[3] On the one recorded occasion when a state court deviated from accepted Constitutional doctrine, the United States Supreme Court, acting through Mr. Justice Black, stayed the state court's action with an order evincing Black's belief that the full Supreme Court would follow Story's view.[4] In related areas of concern, federal authorities are consistent.[5] This court's ruling in Cannon v. Laxalt was compatible.[6] An opinion of a prior Nevada Attorney General, issued years before this litigation, also recognized that neither Nevada nor any state may super-add qualifications for any federal office, such as the one here involved.[7]

In opposition to this plethora of authority, counsel for respondent suggests that Mr. Justice Story's view was wrong and self-serving, and that all subsequent authorities have undiscerningly followed Justice Story and have thus been led into error. Clearly, this Court could not make such an idea the basis for rejecting the uniform pronouncements of all recognized authorities.

---

[3]Among state court decisions supporting the proposition that a state may not superimpose additional qualifications upon the right to federal office are: State ex rel. Chavez v. Evans, 446 P.2d 445 (N.M. 1968); State v. Senner, 375 P.2d 728 (Ariz. 1962); State v. Crane, 197 P.2d 864 (Wyo. 1948); State v. Zimmerman, 24 N.W.2d 504 (Wis. 1946); People v. Sischo, 144 P.2d 785 (Cal. 1943); State v. Thorson, 6 N.W.2d 89 (N.D. 1942); Stockton v. McFarland, 106 P.2d 328 (Ariz. 1940); Ekwall v. Stadelman, 30 P.2d 1037 (Ore. 1934); State v. Howell, 175 P. 569 (Wash. 1918). *Zimmerman, Stockton, Ekwall,* and *Howell,* cited above, all were specifically concerned with state constitutional or statutory provisions purporting to preclude state judges from seeking federal office.

Among federal court decisions to the same effect are: Dillon v. Fiorina, 340 F.Supp. 729 (D.N.M. 1972); Stack v. Adams, 315 F.Supp. 1295 (N.D. Fla. 1970); Exon v. Tiemann, 279 F.Supp. 609 (D. Neb. 1968).

When the issue has been presented to the houses of the Congress, the same result has been reached. Turney v. Marshall, 2 Cong. El. Cas. 167 (1856); Trumbull's Case, 2 Cong. El. Cas. 618 (1856); Barney v. McCreery, 1 Cong. El. Cas. 167 (1808).

The rationale underlying these holdings, which to us appears compelling, is that the Constitution of the United States declares: "This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

[4]Davis v. Adams, 400 U.S. 1203 (1970).

[5]See, for example, Powell v. McCormack, 395 U.S. 486 (1968).

[6]80 Nev. 588, 397 P.2d 466 (1964).

[7]Op. Att'y Gen. No. 897 (March 29, 1950).

When a state law or constitutional provision may be construed in two ways, one offensive to the U.S. Constitution and one not, this Court will ordinarily adopt the construction which favors constitutionality, thus permitting the state law or constitutional provision to operate to the extent compatible with the U.S. Constitution. Orr Ditch Co. v. Dist. Ct., 64 Nev. 138, 178 P.2d 558 (1947). This course seems particularly appropriate as to Art. 6, § 11, in light of the 1863 debates relative to the Nevada Constitution, mentioned above.

Accordingly, we hold that Art. 6, § 11 of the Nevada Constitution has no application to federal offices, and therefore constitutes no bar to petitioner Santini's candidacy for the office of Representative in the Congress of the United States. A peremptory writ of mandamus will therefore issue forthwith, in accord with the prayer of the petition on file herein.[8]

---

[8]It should be noted that the U.S. Constitution declares: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." Art. I, § 4. Therefore, it has been held that states may fix procedural or regulatory conditions for the conduct of elections for federal office, as distinguished from adding qualifications for candidacy. For example, Storer v. Brown, 415 U.S. 724, 42 Law Week 4440 (March 26, 1974), and Good, Wise and Hayakawa v. Brown, ...... F.Supp. ...... (Case No. C–74–0535 RFP, N.D. Cal. March 27, 1974), upheld the constitutionality of statutes relating to political affiliation. Fowler v. Adams, 315 F.Supp. 592 (M.D. Fla. 1970), held a state's imposition of filing fees did not constitute an imposition of a "qualification."