**AMERICANS FOR MEDICAL RIGHTS,**
**a non-profit corporation, Plaintiff,**

**v.**

**Dean HELLER in his official capacity**
**as Secretary of State of the State**
**of Nevada, Defendant.**

**No. CV–S–98–0413–PMP (RJJ).**

United States District Court,
D. Nevada.

April 16, 1998.

Donald J. Campbell, J. Colby Williams, Donald J. Campbell & Associates, Las Vegas, NV, for Plaintiff.

Brooke Nielsen, First Asst. Atty. Gen., Kateri Cavin, Deputy Atty. Gen., Carson City, NV, for Defendant.

### ORDER and PRELIMINARY INJUNCTION

PRO, District Judge.

Presently before the Court is Plaintiff Americans for Medical Rights' ("AMR") Emergency Motion for Injunctive Relief (# 7) filed on March 20, 1998. Defendant Dean Heller ("Heller" or "the State") filed an Opposition (# 11) on April 1, 1998. On April 3, 1998, AMR filed its Reply (# 12). The Court held a hearing on the Emergency Motion for Injunctive Relief on April 6, 1998.

Also before the Court is Defendant Heller's Motion to Dismiss (# 10) filed on March 30, 1998. AMR filed an Opposition (# 12) on April 3, 1998. Heller filed a Reply (# 15) on April 9, 1998.

### I. Factual Background

In statewide elections held in 1994 and 1996, the voters of Nevada passed Ballot Question 10 which limited campaign contributions and amended the Nevada Constitution. Article 2, section 10(2) of the Nevada Constitution now states the following:

1. As used in this section, "contribution" includes the value of services provided in kind for which money would otherwise be paid, such as paid campaign paraphernalia printed or otherwise produced, and the use of paid personnel to assist in a campaign.

.2. The legislature shall provide by law for the limitation of the total contribution by any natural or artificial person to the campaign of any person for election to any office, except a federal office, to $5,000 for the primary and $5,000 for the general election, and to the approval or rejection of any question by the registered voters to $5,000, whether the office sought or the question submitted is local or for the state as a whole. The legislature shall further provide for the punishment of the contributor, the candidate, and any other knowing party to a violation of the limit, as a felony.

In 1997, the Nevada legislature enacted a law providing for the limitation of contributions to campaigns for office, but it did not enact any laws addressing contributions to ballot questions. Nev.Rev.Stat. § 294A.100 (1997). The legislative history relating to Nev.Rev. Stat. § 294A.100 indicates that the reason that the Nevada legislature did not implement that part of the Nevada Constitution relating to ballot questions was that the legislature did not believe that the provision was constitutional. *Minutes of the Senate Committee on Government Affairs*, 69th Sess., Mar. 19, 1997 at p. 6.

As a result, the Secretary of State of Nevada requested an opinion from the Attorney General of Nevada as to whether the portion of article 2, section 10(2) relating to ballot initiatives was constitutional and how it would be enforced. The Attorney General responded that article 2, section 10(2) was constitutional. The Attorney General also opined that it was effective even though the legislature had not enacted a statute imple-

menting that portion of the Nevada Constitution and that it should be enforced through the general misdemeanor statute. Nev. Op. Att'y Gen No. 98–09 (Mar. 4, 1998).

AMR is a nonprofit organization that plans to urge the passage in Nevada of an initiative legalizing the medical use of marijuana. AMR has filed an initiative petition with the Nevada Secretary of State's Office and has announced plans to fund the drive to obtain the requisite signatures to have the initiative placed on the ballot for the November 1998 statewide election. The deadline for obtaining the requisite number of signatures and providing them to the Secretary of State is June 16, 1998. Once the signatures are provided to the Secretary of State, the State must certify them before the initiative qualifies for the November ballot. AMR has been successful in placing similar initiatives on the ballots in the States of California, Maine and Alaska. AMR has further indicated its intention to contribute over $5,000 to its efforts to have the initiative passed and averred during oral argument conducted on April 6, 1998, that it will also seek to raise contributions in excess of $5,000 to fund its efforts.

AMR asks this Court to preliminarily enjoin Nevada from enforcing article 2, section 10(2) of the Nevada constitution pending a determination of whether it violates the First Amendment to the United States Constitution.

## II. Discussion

The State opposes AMR's Emergency Motion for Injunctive Relief and moves to dismiss AMR's lawsuit on justiciability grounds and for failure to state a claim upon which relief can be granted. Since this Court can not decide the Emergency Motion for Injunctive Relief unless it has jurisdiction, the Court will first address the State's Motion to Dismiss.

### A. Motion to Dismiss

The State argues that the Court should dismiss AMR's suit because it is not ripe for decision, AMR does not have standing, and AMR has failed to state a claim upon which relief can be granted.

### 1. Ripeness

The ripeness doctrine serves to prevent courts from deciding issues prematurely. Generally, a court does not have jurisdiction to consider a case unless the complaining party has suffered an injury. *See* Erwin Chemerinsky, Federal Jurisdiction, § 2.4.1 at 114–115 (1994). However, in some cases, a court will determine that a case is sufficiently ripe to allow it to consider the constitutionality of a law based on a facial attack. *See Id.* In order to determine if the case is sufficiently ripe courts consider two factors: (1) whether the facts are sufficiently developed to allow judicial review and (2) the hardship that will result if a determination of constitutionality is postponed. *Winter v. California Medical Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir.1989) (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), overruled on other grounds, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). Courts often relax the ripeness doctrine when the facial challenge to a law involves the exercise of rights protected by the First Amendment. *See, e.g. New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

The ripeness doctrine contains both prudential and constitutional inquiries. *Duke Power Co v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 81–82, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Determining the fitness for review concerns whether it would be prudential for the court to undertake review, while the hardship prong relates to the constitutional requirement that a party suffer an injury for the suit to qualify as a live case or controversy. *Id.*

The State argues that AMR fails to meet both the fitness and hardship requirements of the ripeness doctrine. In addition, the State contends that the case is not ripe because the Nevada Constitution does not prohibit political speech.

### a. Fitness for Review

The initiative that AMR advocates must meet several requirements before it qualifies to be on the ballot. The State argues that the facts are not sufficiently developed because AMR's initiative is currently

in the signature gathering stage and has not qualified as a ballot question for the November 1998 election.

This prong of the ripeness test concerns whether the development of additional facts would be pertinent and helpful to the Court's decision in the case. For example, in a case challenging the Pregnancy Discrimination Act of 1978, the court found that the facts were inadequately developed because the plaintiff did not describe the programs that it alleged were violating the law. *National Conference of Catholic Bishops v. Bell*, 490 F.Supp. 734, 738–39 (D.D.C.1980)

The Court finds that the fact that the initiative has not yet qualified for the November ballot does not affect this Court's ability to decide this case. AMR's intention to contribute over $5,000 to support the initiative is clear. So is AMR's expressed intention to raise contributions in excess of $5,000 to fund the initiative campaign. Whether AMR's intention violates the Nevada Constitution and whether the portion of the Nevada Constitution that limits contributions to ballot questions are constitutional are purely a legal questions. Therefore, the facts in this case are fit for review.

### b. Hardship

This factor relates to the hardship that AMR will suffer if the Court does not allow a facial challenge. The State claims that AMR will not suffer any hardship if the Court does not decide the case because AMR's potential injury is too remote and AMR does not face a sufficient threat of prosecution.

### i. Remoteness

■ The State argues that because the Nevada Constitution only limits contributions related to initiatives that have already qualified for the ballot, AMR's injury is too remote to be ripe for adjudication because AMR has not yet and might never engage in any prohibited conduct. The State reasons that because AMR's initiative is still in the petition stage and may never qualify for the November election, AMR can contribute whatever it likes to the signature drive. Therefore, the State argues that the Court should wait to decide this case until such time as AMR's proposed initiative actually qualifies for the November ballot.

However, other courts have found cases to be ripe even when the plaintiff has not yet engaged in the prohibited conduct but alleges an intention to engage in such conduct. *See New Mexicans for Bill Richardson, v. Gonzales*, 64 F.3d 1495, 1497–1502 (10th Cir. 1995) (finding attack on law that limited money that could be spent on state election campaigns ripe even though plaintiff had not announced his candidacy for state office). Another case involves the same factual scenario as this case. In *Michigan State Chamber of Commerce v. Austin*, a law limited the amount that a corporation could contribute to a ballot question committee. 788 F.2d 1178, 1179 (6th Cir.1986). In that case, the plaintiff had alleged it wanted to contribute money to oppose a ballot question that was not on the ballot. *Id.* at 1179–80. The court found that the fact that the initiative was not on the ballot did not make the case unripe for two reasons. First, requiring that the initiative qualify for the ballot would not provide an adequate opportunity for complete judicial review because certification could occur just as late as 49 days before the election. *Id.* at 1183. Second, there was a reasonable probability that the group seeking to have the initiative put on the ballot would be successful because it had been successful in qualifying petitions three times in the past. *Id.* at 1184.

As in *Austin*, requiring AMR's initiative to qualify for the ballot before AMR could bring suit would not allow AMR time to adjudicate its claims. AMR has filed an initiative petition with the State and has until June 16, 1998, to obtain the required number of signatures. Once the signed petition is turned into the State, the State must certify the signatures. That process could take several weeks. The election is in November 1998. While AMR has more time than the plaintiff in *Austin*, it still would have a very limited time to adjudicate its claim before the November 1998 election. During that time, it would likely be inhibited from contributing over $5,000 to support the ballot question for fear of violating the law. Also, as in *Austin*, there is a reasonable probability that AMR will be successful in qualifying the initiative as a ballot question because AMR has succeeded in placing similar initiatives on the

ballots in the States of California, Alaska, and Maine. AMR's probability of success and the closeness of the election support the conclusion that AMR's claim is not too remote. In addition, assuming AMR succeeds in placing the issue on the ballot, it has clearly expressed its intention to want to raise and to spend sums in excess of $5,000, thus violating article 2, section 10(2) of the Nevada Constitution.

In addition to having an inadequate time to adjudicate its claims, AMR's claims are not too remote because article 2, section 10(2) is currently chilling AMR's speech. AMR must make decisions now about whether and how to raise and use its resources. Although AMR can spend as much as it wants to get the initiative placed on the November ballot, the possibility that its fundraising and spending might be limited once the initiative is on the ballot clearly inhibits AMR's fundraising and spending on the petition drive.

### ii. Threat of prosecution

■ The State also maintains that AMR will not suffer any hardship if the Court refuses to review this case now because AMR does not face a sufficient threat of prosecution. In its initial pleadings, the State argued that there was an insufficient threat because no prosecution had been initiated or threatened. In its Reply (# 15) to AMR's Opposition to the Motion to Dismiss, the State adds another argument. It reasons that AMR does not face a threat of prosecution from the current Defendant, Secretary of State Heller, because only a county district attorney can initiate prosecution and no district attorney is a party to the suit. The State further argues that there is an inadequate threat of prosecution as to spending because under its interpretation of the provision of the Nevada Constitution, AMR can spend as much as it wants to support or oppose a ballot question.

The Supreme Court has held that when a party challenges the constitutionality of a state criminal statute, it is not necessary that the party subject itself to criminal prosecution. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Although speculative fears of prosecution are inadequate, if the party professes an intention to engage in the conduct prohibited by the law and there is a credible threat of prosecution, then the party can facially challenge the law. *Id.* In cases where the law infringes on speech and provides criminal penalties, courts have found an adequate threat of prosecution where the plaintiff intended to engage in prohibited conduct and the state had not disavowed an intention to prosecute. *Id.* 442 U.S. at 301–02; *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1502 (10th Cir.1995); *Let's Help Florida v. McCrary,* 621 F.2d 195, 198–99 (5th Cir.1980) (also noting that the defendant said the state would be compelled to enforce the law); *see also San Francisco Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 821 (9th Cir.1987) (finding that threat of prosecution requirement is relaxed in First Amendment cases).

AMR has expressed an intention to violate article 2, section 10(2) of the Nevada Constitution by spending more than $5,000 in support of the initiative and by accepting contributions over $5,000. The foregoing above cases demonstrate that the State's initial argument that no prosecution has been initiated or explicitly threatened against AMR does not mean that there is not an adequate threat of prosecution. However, that does not end the inquiry regarding the State's argument that there is not an adequate threat of prosecution because only a county district attorney can initiate prosecution and no district attorney is a party.

According to the Nevada Attorney General, article 2, section 10(2) of the Nevada Constitution is punishable as a misdemeanor pursuant to Nev.Rev.Stat. § 193.170. Nev. Att'y Gen. Op. 98–09 (March 3, 1998). A prosecution under § 193.170 must be initiated by a district attorney. Nev.Rev.Stat. § 252.080 (1997) (district attorney is the public prosecutor for each county); *Ryan v. Eighth Judicial Dist. Court,* 88 Nev. 638, 503 P.2d 842, 844 (1972) (powers of attorney general found only in legislative enactment).

Although a district attorney must initiate the prosecution, had the Nevada legislature enacted a law implementing article 2, section 10(2) of the Nevada Constitution when it passed Nev.Rev.Stat. § 294A.100, the Secretary of State would have had the power to enforce that law. The restriction on contri-

butions to candidates imposed in accordance with the Nevada Constitution by Nev.Rev. Stat. § 294A.100, was codified in the campaign practices chapter of the Nevada Revised Statutes. Since the provision of the Nevada Constitution limiting contributions to ballot issues also concerns campaign practices, it too would have been codified in that chapter. The Secretary of State of Nevada has the power to take such action as necessary to enforce the campaign practices laws. Nev.Rev.Stat. § 294A.385 (1997).

The reality is that a prosecution for violation of article 2, section 10(2) will not likely occur unless the Secretary of State notifies a district attorney of a campaign practices violation. The Secretary of State is generally responsible for insuring that campaign rules are followed. Also, a committee like AMR must report contributions made to it in excess of $100 and expenditures it makes in excess of $100 to the Secretary of State. Nev.Rev.Stat. §§ 294A.150, .220 (1997). Therefore, the Secretary of State will be the party that knows of potential campaign practices violations by groups like AMR. Since the Secretary of State is the party primarily responsible for enforcing limits on contributions to ballot measures and since the Secretary of State can request that a district attorney prosecute, the fact that AMR did not include a district attorney as a defendant does not mean that there is not an adequate threat of prosecution.

The State also claims an inadequate threat because the Attorney General argues that AMR can *spend* whatever it wants to support passage of a ballot question, notwithstanding the fact that it cannot accept contributions over $5,000. The State interprets article 2, section 10(2) of the Nevada Constitution to only apply to contributions to a group like AMR. According to the State, the case is not ripe because AMR has not alleged that it intends to accept contributions over $5,000 or make contributions over $5,000 to another group. Moreover, the State has not committed that it will not prosecute if a court interprets article 2, section 10(2) to include expenditures. Therefore, the State's contention that AMR can spend whatever it wants is not an adequate disavowal of an intention to prosecute.

The Court finds an adequate threat of prosecution in this case because the Secretary of State is the real enforcing party and has not disavowed an intention to prosecute. Given that AMR expressly intends to violate article 2, section 10(2) of the Nevada Constitution, an adequate intention to prosecute and an injury that is not too remote, the Court finds that AMR satisfies the hardship element of ripeness.

### c. Political Speech

■ In addition to claiming that AMR does not meet the two requirements of the ripeness doctrine, the State maintains that this case is not ripe because the Nevada Constitution does not prohibit political speech. As support the State cites *Fireman's Fund Ins. Co. v. Quackenbush* where the court held that a First Amendment challenge to California's regulations limiting insurance rates was not ripe because the regulations did not prohibit speech. 87 F.3d 290, 296 (9th Cir.1996). The regulations provided that insurance companies could not get reimbursed for political speech by increasing insurance rates to consumers. *Id.* Therefore, the regulations did not prohibit speech, but refused reimbursement. *Id.*

The State claims that the Nevada Constitution does not limit speech, but only places a reasonable limit on contributions. The Supreme Court, however, has held that spending money on political speech and contributions to groups spending money on political speech does involve free speech. *See Citizens Against Rent Control v. Berkeley,* 454 U.S. 290, 299, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). Therefore, limiting the amount that can be spent or contributed directly interferes with free expression, and the State's argument must be rejected. *See Id.*

### 2. Standing

■ The State also moves to dismiss AMR's claims on the ground that AMR lacks standing. Standing requires that a plaintiff meet the following three elements:

1) the plaintiff must have suffered an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent; 2) there must be a causal connection between the injury and

the conduct complained of; and 3) it must be likely that the injury will be redressed by a favorable decision.

*Duval Ranching Co. v. Glickman,* 965 F.Supp. 1427, 1439 (D.Nev.1997) (citing *Lee v. State of Oregon,* 107 F.3d 1382, 1387 (9th Cir.1997)).

The State contends that AMR fails to show an injury because it has not yet qualified the initiative as a ballot question. This Court has already determined that an injury to AMR is imminent. Consequently, AMR meets the injury element. The provision limiting contributions to ballot measures is causing the injury because it is currently chilling AMR's political speech and will do so in the future. A finding by this Court that the provision is unconstitutional will redress the injury because AMR will be able to contribute whatever it likes to the initiative without fear of adverse consequences. Therefore, AMR has standing to bring this suit.

**3. Failure to State a Claim**

■ The State's final contention in its Motion to Dismiss is that AMR has failed to state a claim upon which relief can be granted. The State first argues that AMR does not state a claim because the initiative is not yet on the ballot. However, this Court has already determined that the injury to AMR is immediate enough for AMR to state a claim. The State also contends that AMR fails to state a claim because it only alleged that it would spend over $5,000, while the Nevada Constitution only prohibits it from accepting contributions over $5,000 or contributing over $5,000 to another group.

The Nevada Constitution limits "the total contribution by any natural or artificial person ... to the approval or rejection of any question by the registered voters to $5,000." Nev. Const. art. 2, § 10. The State contends that the word "contribution" as used in the Constitution only refers to payments made to a group campaigning for or against a ballot question and that the following definition makes that meaning clear:

1. "Contribution" means a gift, loan, conveyance, deposit, payment, transfer or distribution of money or of anything of value other than the services of a volunteer, and includes:

(a) The payment by any person, other than a candidate, of compensation for the personal services of another person which are rendered to a:

. . .

(4) Person or group of persons organized formally or informally who advocates the passage or defeat of a question or group of questions on the ballot, without charge to the candidate, person, committee or political party.

(b) The value of services provided in kind for which money would have otherwise been paid, such as paid polling and resulting data, paid direct mail, paid solicitation by telephone, any paid paraphernalia that was printed or otherwise produced to promote a campaign and the use of paid personnel to assist in a campaign.

Nev.Rev.Stat. § 294A.007 (1997). According to the State, AMR is a group that advocates the passage of a ballot question, and contribution means a gift, loan conveyance, deposit, payment transfer or distribution of money to AMR.

Upon closer examination, the definition of contribution in the Nevada Revised Statutes does not support the State's conclusion. The definition states that a contribution is, among other things, a distribution of money. Nev. Rev.Stat. § 294A.007 (1997). A distribution of money would include AMR spending money on advertisements to support a ballot question. The statute also states that a contribution includes payment by any person, other than a candidate, for personal services rendered to a group like AMR or the value of services rendered in kind. Nev.Rev.Stat. § 294A.007(1)(a), (b) (1997). The State implicitly argues that this provision limits the previous sentence. However, Nev.Rev.Stat. § 294A.007(1)(a) and (b) are only examples of kinds of contributions. If they were the only acts that qualified as contributions, a direct payment by an individual to a group like AMR would not qualify because it is not necessarily a payment for services nor is it services rendered in kind. Therefore, an expenditure by AMR to support the passage of a ballot question would be included in the definition of a contribution under the statute because it is a distribution of money.

In addition, the plain language of the provision supports a conclusion that expenditures made by AMR are contributions under the Nevada Constitution. One definition of contribute is "to give or supply in common with others." Webster's New Collegiate Dictionary (1981). By funding the passage of this initiative, along with others' actions in support of the initiative, AMR is contributing to the approval or rejection of the ballot question. If the provision was meant to only include payments to groups, it would have stated that contributions to *committees* are limited to $5,000. For example, in *Michigan State Chamber of Commerce v. Austin*, the statute at issue stated that "a corporation ... shall not make a contribution in excess of $40,000, to each ballot question *committee* for the qualification, passage, of defeat of a particular ballot question ..." 788 F.2d 1178, 1179 (6th Cir.1986) (emphasis added); *see also Let's Help Florida v. McCrary*, 621 F.2d 195, 197 (5th Cir.1980) (statute at issue limited contributions to political *committees* that support ballot issues) (emphasis added).

Given that the plain language of the provision encompasses expenditures by AMR and that the definition of contributions in the statutes does not change the meaning obtained from the plain language, this Court concludes that article 2, section 10(2) of the Nevada Constitution limits expenditures made by AMR in support of a ballot question. David Fratello, the Secretary and Treasurer of AMR, stated that he believes AMR will have to spend in excess of $5,000 to contribute to a ballot question campaign. (Fratello Decl. ¶ 6.) Moreover, at the hearing conducted April 6, 1998, AMR stated its clear intention not only to spend sums in excess of $5,000 to support the ballot initiative, but also to accept contributions in excess of $5,000 for the initiative campaign. Therefore, AMR states a claim for relief.

### B. Emergency Motion for Injunctive Relief

██ To obtain a preliminary injunction, Plaintiffs must make a clear showing of either: (1) probable success on the merits and

irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief. *Topanga Press, Inc. v. Los Angeles*, 989 F.2d 1524, 1528 (9th Cir.1993), *cert. denied*, 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994) (citing *Adultworld Bookstore v. Fresno*, 758 F.2d 1348, 1351 (9th Cir.1985); *Ebel v. Corona*, 698 F.2d 390, 392 (9th Cir.1983)). The Court notes that "these are not two separate tests, but 'merely extremes of a single continuum.'" *Id.* (citation omitted).

> [A] moving party need not demonstrate that he risks irreparable injury, but he must at least show that he will suffer a degree of hardship that outweighs the hardship facing the opposing party if the injunction is not issued. Similarly, a moving party need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation.

*Id.*

"These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir.1990).[1] Moreover, "in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992) (citations omitted).

#### 1. Probable Success on the Merits

██ The Supreme Court considered whether limiting contributions to a group seeking approval or rejection of ballot issues violates the Constitution in *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). There, a city ordinance limited contributions related to ballot questions to $250. *Id.* 454 U.S. at 292, 102 S.Ct. 434. The City of Berkeley argued that the limitation was necessary to

---

**1.** At this stage, the Court need not determine the ultimate issue of whether application of the statute is actually constitutional. Rather the Court "must only determine whether [Plaintiff] has met [its] burden to show a preliminary injunction is appropriate." *Janra Enter., Inc. v. Reno*, 818 F.Supp. 1361, 1363 (D.Nev.1993).

inform the voters of the identity of supporters and opponents of ballot measures. *Id.* 454 U.S. at 298. The Court rejected that argument because the contributors had to make their identity known under a different section of the ordinance. *Id.* The Court noted that exceptions to the general rule that limits on political activity violate the First Amendment are very rare, and are more likely to be found when there is a fear of undue influence. *Id.* 454 U.S. at 296–97. There was no fear of undue influence because the contributions were made to ballot questions, not to a particular person. *Id.* 454 U.S. at 296–298. Therefore, the Court found that the limitation violated freedom of association because it did not allow individuals to pool their money for effective speech. *Id.*

The Supreme Court also considered whether a state could limit expenditures related to ballot questions in *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). The Court found a state statute that did not allow a corporation to spend money to support a referendum unconstitutional as a direct infringement on free speech. *Id.* 435 U.S. at 777, 784, 98 S.Ct. 1407. Even if a law merely limits the amount that a group can spend, speech is still infringed because the law reduces the amount of speech. *See Berkeley,* 454 U.S. at 299, 102 S.Ct. 434 (fining that limiting contributions also violates free speech because it limits expenditures).

Article 2, section 10(2) of the Nevada Constitution limits both contributions and expenditures. According to *Berkeley,* the limits on contributions violate the freedom of association and free speech, and according to *Bellotti,* the limits on expenditures violate free speech. Here the State does not argue that the provision advances an interest important enough to justify infringing on the First Amendment. Instead, the State offers three reasons why the provision is constitutional. First, the State argues that the Nevada Constitution should be presumed to be constitutional unless it is clearly unconstitutional. *See Nevada ex rel. Santini v. Swackhamer,* 90 Nev. 153, 521 P.2d 568, 570 (1974). Supreme Court precedent, however, clearly indicates that article 2, section 10(2) of the Nevada Constitution is unconstitutional. Second, the State argues that public percep-

tion supports limiting contributions. This Court acknowledges that public perception and the will of the majority of voters as expressed in the 1994 and 1996 elections regarding Ballot Question 10 are important. However, the very purpose of the First Amendment to the United States Constitution is to protect the rights of all citizens to express political or religious views which may be at odds with those of the majority. The Nevada legislature recognized this important balance when it debated and enacted Nev. Rev.Stat. § 294A.100. The Court finds that the State's argument that public perception supports limiting contributions, without more, does not support a ruling by this Court which is clearly contrary to Supreme Court precedent and the First Amendment to the United States Constitution. The State's third argument is that the Nevada provision is constitutional because it has more reasonable limits than did the Berkeley provision. However, the Supreme Court did not base its analysis on the dollar size of the limitations. Given the clear Supreme Court precedent cited above, the Court finds AMR is likely to succeed on the merits.

### 2. Irreparable Harm

According to the Supreme Court, even a limited infringement on First Amendment freedoms constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The State claims that there is no harm in this case because AMR has not yet been injured. The State is wrong as AMR's speech is currently being chilled. The fact that its initiative has not yet qualified for the ballot does not eliminate or reduce that chill. Understandably AMR does not want to spend money now to place an initiative on the ballot only to have its speech curtailed at a later date. Therefore, the Court also finds that AMR meets the irreparable harm element for injunctive relief.

### 3. Public Interest

Finally, the State argues that the public interest favors denying the preliminary injunction because the Nevada Constitution deserves deference as a document of

the people and because the Nevada voters enacted this provision limiting contributions to ballot questions. The fact that the voters passed this amendment to the Nevada Constitution does not mitigate against granting the injunction because "voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation." *Berkeley,* 454 U.S. at 295, 102 S.Ct. 434.

### CONCLUSION

The Court finds that it has jurisdiction to adjudicate this case, that AMR has standing and that AMR's claims are ripe for decision. Moreover, for the reasons stated above, the Court concludes that AMR will likely succeed on the merits of its claims. AMR's right to free expression under the First Amendment to the United States Constitution is currently being chilled by the threat of prosecution for violation of article 2, section 10(2) of the Nevada Constitution, and the public interest favors protecting AMR's free speech.

IT IS THEREFORE ORDERED that Plaintiff AMR's Emergency Motion for Injunctive Relief (# 7) is granted, and that pending further Order of this Court, Defendant and the political subdivision thereof are hereby enjoined from enforcing article 2, section 10(2) of the Nevada Constitution against Plaintiff AMR in connection with its efforts to support the proposed ballot initiative at issue in this case and no bond shall be required of Plaintiff AMR to secure the instant Preliminary Injunction.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (# 10) is denied.